444 P.2d 513

Barbara McWILLIAMS et al., Plaintiffs,

v.

INDUSTRIAL COMMISSION of Utah, Olympia Sales Company, a corporation, and The State Insurance Fund, Defendants.

No. 11043.

Supreme Court of Utah.

Aug. 26, 1968.

Theron E. Roberts, of Roberts & Poole, Boise, Idaho, for plaintiffs.

Phil L. Hansen, Atty. Gen., Robert D. Moore, Salt Lake City, for defendants.

ELLETT, Justice.

Plaintiffs' decedent, while in the course of his employment, fell and sustained a basal skull fracture. He claimed the fall was occasioned by his being overcome by lacquer fumes. The defendants allowed and paid compensation insurance until his death. Some seven months after his fall the decedent developed an irregularity in his heart beat and had a pacemaker surgically implanted in his body. He was released from the hospital and died the next day.

The plaintiffs, the widow and children of the decedent, filed an application for death benefits and brought the matter before this court when the Industrial Commission denied their claim. The sole question involved before the Commission was whether decedent's death was caused in whole or in part by the inhalation of lacquer fumes and the fall or either of them.

A medical panel was appointed consisting of three doctors, and a report was submitted by the panel to the Industrial Commission. The plaintiffs objected to the report, and a hearing was held at which Dr.

Kilpatrick, a member of the panel, testified as follows:

Q As I understand your testimony, Doctor—just to review for a little bit here—it's your opinion that there is no connection between lacquer exposure and the type of heart disease that the deceased had in this instance; is that correct?

A That's true.

Q And is it also your opinion that there is no connection between the fall, the type of fall that Mr. McWilliams had, and the resulting problems of his heart?

A That's true.

Q And it is also your opinion today, Doctor, that the combination of both the lacquer paint and the fall would not contribute to the heart disease as you found it in the deceased; is that correct?

A Yes, sir.[1]

Thereafter an amended objection was filed by plaintiffs wherein they objected to the entire panel because Dr. Viko, the chairman of the panel, had during decedent's lifetime examined him at the instance of the State Insurance Fund. Plaintiffs claimed that the panel was not impartial, whereupon the Industrial Commission appointed a second panel of five doctors. This panel made its report, and again the plaintiffs objected thereto. The chairman

1. The plaintiffs made no objection to this testimony.

of the panel, Dr. Orme, appeared at the hearing, and the following proceedings occurred:

Q   Doctor, in regards to the Panel Report, are the findings, opinions and conclusions reached therein—that would [be] pages 1, 2, 3, 4 and 5—your present opinion, conclusions and findings as to the circumstances surrounding the demise of Mr. McWilliams?

A   Yes, sir.

MR. MOORE: I have nothing further at this time.

MR. BLACK: I have no questions.

This second report was then received in evidence and was before the Commission for its consideration pursuant to Section 35–1–77, U.C.A.1953.[2]

Whether the first report should be considered as evidence is of no importance because the testimony of Dr. Kilpatrick was in the record and was before the Commission. That testimony alone was sufficient to sustain the Commission as made.

Section 35–1–85, U.C.A.1953, reads: "* * *   The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review; * * *."

■   The plaintiffs rely upon the testimony given by way of depositions of two

doctors from out of state. It is within the prerogative of the Industrial Commission to believe the testimony of the defendants' doctors in preference to that of the plaintiffs' physician and surgeon, and especially is this true when neither of the plaintiffs' witnesses had any particular training in the matter of heart diseases, one being an orthopedic surgeon, the other a general practitioner, and neither of whom knew the decedent. The Industrial Commission had appointed specialists to the panels as follows: The original panel had three doctors all of whom were specialists in the treatment of heart diseases. The second panel consisted of three specialists in heart and cardiovascular diseases, one in neurology and electroencephalography, and the fifth one in internal medicine.

■   Since all eight of these expert witnesses were of the opinion that the death of the decedent was not related to any inhalation of fumes or to a fall caused thereby, it cannot be said that the Industrial Commission acted in an arbitrary or capricious manner. Under the law it is our duty to sustain the order as made. The complaint of the plaintiffs is, therefore, dismissed. No costs are awarded.

CROCKETT, C. J., and HENRIOD, J., concur.

2. Section 35–1–77, U.C.A.1953, provides that the panel report is not to be considered as evidence when an objection is made thereto except insofar as it is sustained by testimony admitted.

TUCKETT, Justice (dissenting).

I dissent. I am of the opinion that the Industrial Commission was arbitrary in disregarding the evidence before it pertaining to the cause of McWilliams' disability and demise and also that it was error for the Commission to base its findings in whole or in part on the report of the first medical panel.

Following his injury on July 22, McWilliams' physical condition continued to deteriorate and he died on March 3, 1965. The record before the Commission shows that McWilliams, age 38, was strong and healthy and had suffered no physical disability except that some years prior he had suffered a back disability which had been repaired by a spinal fusion. The testimony of Mrs. McWilliams, as well as the testimony of other acquaintances, showed that McWilliams was a hard worker and that he not only worked on his job, but that he also assisted other friends, relatives and neighbors in various projects in his line of work.

Following the accident on July 22, 1964, McWilliams continued to suffer from extreme headaches, vertigo and syncopal attacks resulting in total loss of consciousness.

The evidence shows that McWilliams suffered from functional heart disease which eventually resulted in his death. His disability consisted of a slowing-down of his heart to such an extent that certain movements of his body, such as turning his head, resulted in his becoming dizzy and on occasion losing consciousness. In an effort to correct and improve the function of the heart, a cardiac pacemaker was surgically implanted in McWilliams' heart muscle on February 26, 1965. McWilliams' condition improved for a few days but he nevertheless died at his home the morning following his discharge from the hospital.

The Commission pursuant to statute, referred the matter to a medical panel to study the matter and to make a report and findings. An objection was made to the report of the panel on the ground of disqualification of one of its members. Another panel was appointed by the Commission to study the matter and to make findings.

The Commission was called upon to determine the factual issue as to whether or not the heart malfunction suffered by McWilliams was directly related to or caused by the injury suffered on July 22, 1964.

In support of their claim the plaintiffs submitted the deposition of Dr. Franklin C. David, a general practitioner, who resides in Boise, Idaho. Dr. David was of the opinion that it was reasonably probable that the injury suffered by McWilliams affected the vagus nerve and that an overstimulation of that nerve would tend to override the built-in pacemaker of the heart and interfere with the heart's conduction

system. The plaintiffs also offered the testimony of Dr. Jerome Burton by way of a deposition which was made a part of the record. Dr. Burton was an orthopedic surgeon who had practiced that specialty in Boise, Idaho for a period of 25 years. Dr. Burton was of the opinion that it was probable that the injury suffered by Mc-Williams resulted in an interference with the conduction mechanism of the heart, resulting in right bundle branch block, which in turn resulted in the slowing of the heart. It was his opinion that McWilliams died from a stoppage of the heart from an unopposed vagal influence upon the organ. He was further of the opinion that the neck and head injury knocked out the sympathetic stimulus, and that without opposition and possibly from irritation of the vagus nerve by reason of the skull fracture, the slowing-down mechanism of the heart was allowed to run out of bounds and eventually stopped the heart completely.

Following McWilliams' death an autopsy was performed. The autopsy revealed no evidence of a prior or pre-existing heart disease. The report of the autopsy was before the Commission and the medical panel.

·The second medical panel made the finding·as follows:

The panel finds that it is highly probable that Mr. McWilliams had organic heart disease involving the conduction system of

the heart which antedated his fall and alleged accident and which was responsible for the fall, and the subsequent progression of the heart disease leading to his death. Further, the panel finds no evidence that the inhalation of lacquer fumes, as alleged, was responsible for the heart disease or its consequences.

The plaintiffs objected to the report of this medical panel and a further hearing was had before a referee appointed by the Commission. At the hearing Dr. James F. Orme, chairman of the medical panel, appeared as a witness and testified before the referee. On cross-examination Dr. Orme was asked to relate the evidence on which he based his conclusion that McWilliams was suffering from a heart ailment prior to July 22, 1964, when he fell and suffered a head injury. Dr. Orme answered to the effect that his conclusion was based on the fact that the hospital record made at the time of McWilliams' admission following his head injury indicated that McWilliams had complained of dizziness prior to that date. It would appear that this statement was made by a fellow worker, and not by the decedent. When asked how important this report of prior dizziness was in the formulation of his opinion respecting McWilliams' pre-existing heart condition, Dr. Orme replied that it was not very important. Dr. Orme further testified that the only evidence contained in the report of the autopsy which

would indicate a heart disease was the infarction around the installed pacemaker.

The statute[1] authorizing the Commission to submit problems to medical panels for report and findings provides in part as follows:

\* \* \* If no objections are filed \* \* \* the report shall be deemed admitted in evidence and the commission may base its findings and decision on the report of the panel, but shall not be bound by such report if there is other substantial conflicting evidence in the case which supports a contrary finding by the commission. If objections to such report are filed it shall be the duty of the commission to set the case for hearing \* \* \* to determine the facts and issues involved, and at such hearing any party so desiring may request the commission to have the medical panel or any of its members present at the hearing for examination and cross-examination. Upon such hearing the written report of the panel may be received as an exhibit but shall not be considered as evidence in the case except in so far as it is sustained by the testimony admitted. \* \* \*

It would appear that the legislature by use of the language above quoted intended that the report of the panel of medical experts should be considered on the same basis as expert testimony received in any judicial or quasi-judicial proceeding. The opinion of an expert must be based upon facts, either proved or assumed. An expert opinion based upon a nebulous factual foundation is of little value in arriving at the truth of a proposition. The value of an opinion of an expert is dependent upon and is no stronger than the facts on which it is based.[2]

I am of the opinion that the Commission erred in adopting a report of the medical panel which appears not to have been based on an evidentiary foundation.[3] I am of the opinion that the first medical panel being disqualified by the Commission and a second panel appointed it was error on the part of the Commission to consider the report of the first panel and to base its findings thereon at least in part.

It should be noted that the opinion of the Court quotes from the testimony of Dr. Kilpatrick who testified on behalf of the "disqualified" panel.

I would reverse.

CALLISTER, J., concurs in the dissenting opinion of TUCKETT, J.

1. Sec. 35–1–77, U.C.A.1953.
2. Hamilton v. Huebner, 146 Neb. 320, 19 N.W.2d 552, 163 A.L.R. 1.
3. Nicholson v. Industrial Comm., 15 Utah 2d 176, 389 P.2d 730.