469 P.2d 500

**UTAH PACKERS, INC., and Underwriters Insurance Company, Plaintiffs,**

v.

**The INDUSTRIAL COMMISSION of Utah and Lawrence L. Scruggs, Defendants.**

**No. 11887.**

Supreme Court of Utah.

May 11, 1970.

---

Frank J. Allen, of Clyde, Mecham & Pratt, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., Salt Lake City, Glen J. Ellis, of Maxfield, Gammon, Ellis & McGuire, Provo, for defendants.

CALLISTER, Justice:

The plaintiffs, Utah Packers, Inc., and its insurance carrier, seek review of an order of the Industrial Commission awarding compensation to claimant, Scruggs, for an injury by accident during the course of his employment. Plaintiffs assert that the Commission abused its discretion by its refusal to submit to a medical panel the medical issues for reconsideration in light of the additional medical evidence which was entered into the record subsequent to the report of the medical panel.

Applicant, Scruggs, was employed in the cannery of Utah Packers, as a member of a three-man crew operating a labeling machine. On July 7, 1967, the third day of his employment, he experienced a sudden onset of pain in his back and was taken by

ambulance to the hospital. In a report by the attending physician, Dr. Clark, it was stated that the patient was working at the cannery and leaned over to pick up a box of canned goods and experienced sudden severe back pain; that patient had in the last two years had occasional twinges of pain but never any episode such as the present one; that he had worn a corset on his back about six months ago because of these twinges of pain. The patient was hospitalized until the 14th of July, 1967, for bed rest and physiotherapy.

In August, the applicant consulted a chiropractor. On September 25, 1967, applicant was examined by an orthopedic surgeon, Dr. Kezerian, who recorded in his case history that patient had a sudden onset of pain in the low back, neck and right shoulder, with weakness in the lower extremities while on the job but without an identifiable traumatic episode. The diagnosis was a simple strain or sprain; that this was an event incident to a mild physical incapacity of long standing; that the patient had returned to a preinjury level; and that there was no aggravation of a preexisting condition.

On December 14, 1967, applicant consulted Dr. Charles Smith, Jr., who in his case history recorded that applicant had no history of back trouble prior to July 7, 1967, and that on that date he had a sudden severe back pain while lifting a case full of cans. His diagnosis was a ruptured disc incident to this lifting and clearly of an industrial origin. On April 8, 1968, Dr. Smith performed a surgical procedure, a transverse process fusion from L4 to the sacrum.

In May of 1968, a hearing was held before an examiner. Scruggs testified that he sustained his injury while retrieving a case of canned goods which had fallen underneath a conveyor belt. He denied that he had told Dr. Clark that he had previously worn a corset or supportive device. He testified that he had had no previous back trouble, had been engaged in the performance of heavy work in the construction industry for the past few years, and had never previously made a claim for workmen's compensation. In response to an inquiry as to the medical attention he had received between 1964 and the incident in July of 1967, he stated that he had his eyes checked and a physical examination.

The medical aspects of the claim were then referred to a medical panel which made a report on the 25th of November, 1968. The panel made six findings but the one of critical importance, which was adopted by the Commission, was the finding that there was a reasonable medical probability that the episode at work on the 7th of July, 1967, created the subsequent total temporary disability and the need for surgery.

Plaintiffs filed objections to the panel report, and a hearing was held; Dr. Hol-

brook, chairman of the panel, offered testimony to sustain the report. Dr. Holbrook testified in substance as follows:

Disc herniation, which is a process of deterioration, may progress to the point of extrusion of disc material, with or without a specific traumatic incident precipitating the symptoms; there are a significant number of cases of disc herniation, where there is no history of injury, strain, trauma, or blow to which the patient may point as the event that precipitated the symptoms. There is some evidence that the process that results in herniation has been going on for some time, where the patient has a history of low back twinges which are sufficiently troublesome that the patient has worn a corset. In a review of applicant Scruggs' medical records, the panel found no evidence of a pathological condition in the patient's low back prior to the incident of July 7, 1967; they found no significant evidence in the past history of back trouble. The panel reviewed the case history taken by attending physician, Dr. Clark, wherein he had recorded the patient's experience of twinges of pain in the past two years, and the supportive corset he had worn. The panel concluded that in light of the evidence and testimony in the case (Scruggs' denial that he had told Dr. Clark the information found in the case history) Dr. Clark's report was erroneous and mistaken; and, therefore, there was no evidence of any significant pre-existing pathology.

A subsequent investigation of the applicant revealed flagrant misstatements in his testimony. The Industrial Commission in California transmitted their records to Utah, which were duly entered into the instant case. The information from California indicated that Scruggs, while employed by Redmont Construction Company in California, had fallen in October of 1965. His symptoms were described as pain in the low back with paresthesias in lower extremities and his right upper extremity; the diagnosis was cervical and lumbo-sacral strain. Scruggs received $1,-100 in compensation for disability from October 21, 1965, to February 8, 1966. In 1966, he sustained another injury to his low back while working for contractors Williams and Burrows in San Mateo, California; an attending physician prescribed a back brace, which another physician observed the patient wore. On January 17, 1967, Scruggs executed a compromise and release with Redmont Construction for $750 for cervical and lumbo-sacral strain and all other injuries documented in his medical file.

The hearing examiner made a specific finding that he disbelieved all of the applicant's testimony. Nevertheless, the examiner found that there were two witnesses to the event of lifting boxes of cans; the

trip to the hosptial was corroborated; there was evidence of applicant's brief hospitalization. In April of 1968, the applicant was hospitalized for surgery. Applicant was awarded benefits for his accident arising out of or in the course of his employment of July 7, 1967. The Industrial Commission sustained the hearing examiner.

Plaintiffs, in a motion for review, moved that the case be referred back to a medical panel for a re-evaluation based upon the additional medical evidence received from California. Plaintiffs asserted that the medical panel, on the basis of applicant's case history from California, could reasonably revise its prior conclusion and find as a reasonable medical probability that applicant's low-back pathology resulted from an injury in the course of his employment in California in 1965, that he had a recurrence of symptoms related to that pathology on July 7, 1967, during the hours of his employment by Utah Packers, Inc., but not attributable to his activity in that employment, and that such medical and hospital treatment required by applicant since July 7, 1967, was referable to his industrial injury in California.

■ The findings and conclusions of the Industrial Commission are binding upon this court, if there be credible, competent evidence to support them.[1]

Did Dr. Holbrook's testimony sustain the finding of the panel, which the Commission adopted, that there was a reasonable medical probability that the episode at work on July 7, 1967, created applicant's subsequent disability? A review of the testimony of Dr. Holbrook clearly establishes that the medical panel in formulating its expert medical opinion absolutely rejected any evidence which indicated that applicant had a history of significant pre-existing pathology.

In McWilliams v. Industrial Commission,[2] Justice Tuckett, in a dissenting opinion observed that the language used by the legislature in Section 35-1-77, U.C.A.1953, was indicative of an intent that the report of the panel of medical experts should be considered on the same basis as expert testimony received in any judicial or quasi-judicial proceeding. He continued:

* * * The opinion of an expert must be based upon facts, either proved or assumed. An expert opinion based upon a nebulous factual foundation is of little value in arriving at the truth of a proposition. The value of an opinion of an expert is dependent upon and is no stronger than the facts on which it is based.

■ In the instant review, the expert opinion, adopted by the Commission, was

1. Frenchik v. Industrial Comm., 22 Utah 2d 123, 124, 449 P.2d 649 (1969).

2. 21 Utah 2d 266, 271, 444 P.2d 513, 516 (1968).

based upon a distorted and incorrect factual foundation; therefore, there is an insufficient quantum of substantial, competent evidence to sustain the award by the Commission to applicant. This matter is remanded to the Industrial Commission that it might have the opportunity to submit the medical issues to a panel for consideration, now that an accurate medical history of the applicant has been revealed.

The decision of the Industrial Commission is reversed and remanded for further consideration in accordance with this opinion.

CROCKETT, C. J., and TUCKETT and HENRIOD, JJ., concur.

ELLETT, J., concurs in the result.