**INTERMOUNTAIN HEALTH CARE, INC., Petitioner,**

v.

**BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH and Linda Lee Taylor, Respondents.**

No. 910592–CA.

Court of Appeals of Utah.

Aug. 14, 1992.

David M. McConkie and Stuart F. Weed, Salt Lake City, for petitioner.

Jay A. Meservy, Salt Lake City, for respondents.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

ORME, Judge:

Petitioner challenges an Industrial Commission order awarding workers' compensation benefits to a former employee. We affirm.

## FACTS

The facts set forth here are based primarily on the findings made by the Administrative Law Judge (ALJ) and adopted by the Industrial Commission in its Order Denying Motion for Review.

Linda Lee Taylor was an employee of Intermountain Health Care. On March 6, 1987, she sustained an injury to her back while lifting a desk at the request of her department supervisor. Taylor sought and received medical attention for the injury shortly after March 6, 1987, was treated by a neurologist, and was instructed to take a week off work at that time. After being treated conservatively over the summer, she was referred to an orthopedic specialist in the fall of 1987, and was hospitalized for one week in November of 1987.

After a further 30–day absence from work, Taylor returned to work for short intervals beginning in late December of 1987. However, constant sitting and bending while at work caused Taylor to experience severe discomfort in her back and right leg. Thus, pursuant to her doctor's orders, Taylor stayed off work until July of 1988,[1] during which time she received temporary total disability benefits. IHC refused to rehire Taylor when she sought to resume her job duties in July of 1988. Taylor found employment with Interwest Medical, and worked there from October of 1988 until April of 1989, losing two to three days of work per month due to her ongoing back problems. She continued to receive conservative medical care for her back problems until April 15, 1989.

On that day, Taylor attempted to lift her four month old grandchild from a baby

1. A May 11, 1988, letter from Taylor's treating physician indicates that Taylor stopped working due to recurrent episodes of pain.

walker when she experienced a sudden, sharp pain in her back, similar to what she experienced in March of 1987 while lifting the desk. Upon bending down to remove her grandchild from the walker, Taylor's back "went out," she was unable to pick up the child, and she could not straighten up. Taylor testified that she had experienced the same type of pain several times since the original desk-lifting accident in 1987.

Following this incident, Taylor sought treatment for extreme pain in her back, and was hospitalized on April 21, 1989. She was released by her doctor to return to work in May of 1989, but had been terminated by Interwest. Although Taylor attempted to find other work, because of restrictions placed on her activities by her then treating physician, she was only able to work on a part-time basis between April and September of 1989, when she was hospitalized for surgery. At that time, Taylor's treating physician performed disc fusion surgery in an attempt to alleviate some or all of Taylor's discomfort.

In April of 1990, a physician who had not treated Taylor reviewed Taylor's medical records and issued a report assessing the medical cause of the need for the disc fusion surgery. He opined that it was improbable that the surgery would have been necessary if the lifting incident in April of 1989 had not occurred.[2]

After the surgery, Taylor filed an Application for Hearing requesting payment of medical expenses and disability benefits. Because there appeared to be some medical controversy regarding the significance of the April 1989 lifting incident, the ALJ referred the matter to a medical panel to resolve the conflict. The ALJ asked the medical panel whether there was "a medically demonstrable causal connection between the applicant's back problems noted after April 15, 1989 and the March 6, 1987 industrial accident." In its report, the medical panel answered the general inquiry

in the affirmative and concluded that Taylor's September 1989 surgery was 70% the result of the March 1987 industrial injury and 30% the result of the April 15, 1989 incident lifting the baby. The ALJ then determined that the September 1989 surgery was necessary primarily as a result of the March 1987 industrial injury, and that IHC was therefore responsible for payment of the benefits requested by Taylor. IHC sought review of the matter by the Industrial Commission, which affirmed the decision of the ALJ. IHC thereupon appealed to this court.

On appeal, IHC argues that (1) the Industrial Commission incorrectly affirmed the ALJ's finding that the September 1989 disc fusion surgery was necessitated by the industrial accident because the finding was not supported by substantial evidence; (2) the ALJ failed to adopt the correct standard to determine employer liability for nonindustrial injuries occurring after an industrial accident; and (3) the medical panel acted beyond its authority by assuming facts not in evidence, weighing facts, and acting as a factfinder.

## EVIDENTIARY SUPPORT

IHC assails the Industrial Commission's affirmance of the ALJ's decision. The thrust of IHC's attack appears to be against the sufficiency of the evidence to support the ALJ's factual findings, insofar as those findings led the ALJ to conclude that Taylor's September 1989 disc fusion surgery was necessitated by the industrial accident of March 1987. However, IHC makes little effort to identify particular findings of fact which it challenges on this basis, or, indeed, to differentiate in its analysis between factual findings and legal conclusions.

In any event, to successfully challenge findings of fact made in an administrative proceeding, the party seeking to upset

2. In an April 1989 letter to IHC, Taylor's treating physician noted he felt that Taylor's back problems were 25% the result of the 1987 industrial injury and 75% nonindustrial. Sometime after performing Taylor's disc fusion surgery, the same physician opined that Taylor's back problems beginning in April 1989, and the subsequent surgery in September of 1989, were 50% related to the March 6, 1987, industrial injury and 50% the result of nonindustrial degeneration.

those findings must show that the findings are "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1990). *See Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 67–68 (Utah App.1989). Under this "whole record test," a party challenging the findings must *"marshall* all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Id.* at 68 (emphasis in original). *Accord Heinecke v. Department of Commerce,* 810 P.2d 459, 464 & n. 7 (Utah App.1991).

■ In challenging the ALJ's decision, IHC catalogues only that evidence in the record most helpful to its position, and wholly neglects to amass the evidence *supporting* the ALJ's findings. Thus, IHC has "failed to completely satisfy [its] obligation to marshal the evidence by 'persistently arguing [its] own position without regard for the evidence supporting the [ALJ's] findings.'" *Heinecke,* 810 P.2d at 464 (quoting *Horton v. Gem State Mut.,* 794 P.2d 847, 849 (Utah App.1990)).[3] We therefore decline to disturb the findings made by the ALJ and ratified by the Industrial Commission.

## APPROPRIATENESS OF QUESTION SUBMITTED TO MEDICAL PANEL

■ IHC next claims the ALJ's formulation of one of the questions submitted to the medical panel was legally incorrect. Specifically, IHC argues that in submitting to the medical panel the question of whether there was any "medically demonstrable causal connection between the industrial accident and the subsequent injuries," the ALJ adopted a substantially more liberal standard for causation than that adopted by the Utah Supreme Court.

In objecting to the wording of this question, IHC argued that, in place of the language requiring a "medically demonstrable causal connection" between the accident and Taylor's injuries, the question submitted to the panel should have inquired whether the September 1989 disc fusion surgery was the "direct and natural result" of the March 6, 1987, industrial accident. IHC relies on Professor Larson's treatise and two Utah Supreme Court cases in support of its contentions. *See* 1 Larson, *Workmen's Compensation Law,* § 13.11 (1992); *Mountain States Casing Servs. v. McKean,* 706 P.2d 601, 602 (Utah 1985) (adopting Larson's § 13.11 as proper legal standard for determining compensability of injury occurring subsequent to compensable industrial injury); *Perchelli v. Industrial Comm'n,* 475 P.2d 835 (Utah 1970) (cited by Larson in § 13.11(a)). IHC contends that under *Perchelli,* the legal standard for causation is essentially a "but for" test. *See* 475 P.2d at 837. IHC argues that rather than incorporating the allegedly correct "but for" test, the question submitted to the medical panel by the ALJ constitutes a standard for causation that would impose responsibility on an employer upon a finding of even the slightest relationship between the industrial accident and the injury in question. To properly dispose of this claim, it is necessary to analyze the contrasting functions of the medical panel and ALJ, as well as the proper causation standard.

### A. Function of Medical Panel

Referring to the *Perchelli* case, and other cases involving further medical complications flowing from a compensable injury, Professor Larson notes that "[t]he issue in all of these cases is exclusively the medical issue of causal connection between the pri-

---

3. In *Heinecke,* we explained that while evidence contrary to the findings *is* relevant to the appellate court's review of the "whole record," such evidence becomes relevant only when the court "scrutinizes the supporting evidence under the 'substantial evidence viewed in light of the whole record test.'" 810 P.2d at 464 n. 8.

Thus, evidence contrary to that supporting the findings should "be referred to in briefing only after the supporting evidence has been separately marshalled." *Id.* Since IHC has failed to comply with the marshaling requirement in this case, we have no occasion to consider the evidence supporting its position.

mary injury and the subsequent medical complications." 1 Larson, § 13.11(a) at 3–517. Utah Code Ann. § 35–1–77(1)(a) (1991) provides for permissive referral of the medical causation issue to a medical panel by the ALJ:

> Upon the filing of a claim for compensation for injury by accident, or for death, arising out of and in the course of employment, and if the employer or its insurance carrier denies liability, the commission may refer the medical aspects of the case to a medical panel appointed by the commission.

*See also Workers' Comp. Fund v. Industrial Comm'n,* 761 P.2d 572, 576 (Utah App.1988).

The function of the medical panel is to give the Commission "the benefit of its diagnosis relating to those matters that are particularly within the scope of its expertise." *IGA Food Fair v. Martin,* 584 P.2d 828, 830 (Utah 1978).[4] However, "the final responsibility of making the decision as to the issues in such a proceeding is given to the Commission," *id.,* and the medical panel may not take over this responsibility of the Commission. *Id.* at 830 n. 4. *Accord Jensen v. United States Fuel Co.,* 424 P.2d 440, 442 (Utah 1967).[5] Thus, the role of the medical panel is only "to *assist* the administrative law judge in deciding whether medical cause has been proven." *Price River Coal Co. v. Industrial Comm'n,* 731 P.2d 1079, 1084 (Utah 1986) (emphasis added).[6]

### B. Propriety of ALJ's Approach

In the instant case, the question submitted by the ALJ to the medical panel constituted a broad request for information in the form of a medical opinion on the relationship, if any, between Taylor's disc fu-

sion surgery and the prior industrial injury. In a sense, then, whether the question, as phrased, incorporated the correct legal standard for causation is inconsequential because the ALJ, not the medical panel, is responsible for making the actual decision regarding medical causation. *Id.   See also Jensen,* 424 P.2d at 442.

■ We do not agree with IHC that the correct standard for determining employer liability for subsequent injuries occurring after an industrial injury essentially amounts to a "but for" analysis. In *Mountain States Casing Servs. v. McKean,* 706 P.2d 601 (Utah 1985), the Utah Supreme Court stated that "[a] subsequent injury is compensable if it is found to be a *natural result* of a compensable primary injury." *Id.* at 602 (emphasis added). A claimant "is not required to show that his original tragedy was the sole cause of a subsequent injury, but only that the initial work-related accident was *a contributing cause*" of the subsequent injury. *Id.* (emphasis added). *McKean* and *Perchelli* both draw from Larson's statement of the general rule regarding workers' compensation, which provides in pertinent part:

> The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.

1 Larson, *Workmen's Compensation Law,* § 13.11 (1992). In discussing the *Perchelli* case, Professor Larson observed that the result in that case was correct: "The presence of the sneezing incident[, which triggered pain and then disc surgery,] should not obscure the true nature of the case, which is nothing more than a further medi-

---

4. "The medical panel ... shall make such study, take such X-rays, and perform such tests ... as it may determine to be necessary or desirable." Utah Code Ann. § 35–1–77(2)(a) (1991).

5. In *Jensen,* the Utah Supreme Court held that [i]t is not the panel's prerogative to encroach upon the authority vested in the Commission to make the findings of fact and render the decision upon the application. Its proper purpose is limited to medical examination and diagnosis, the evidence of which is to be con-

sidered by the Commission in arriving at its decision.
424 P.2d at 442.

6. "It is through the expertise of the medical panel that the Commission should be able to make the determination of whether the injury sustained by a claimant is causally connected or contributed to by the claimant's employment." *Schmidt v. Industrial Comm'n,* 617 P.2d 693, 697 (Utah 1980) (Wilkins, J., concurring).

cal complication flowing from a compensable injury." 1 Larson, § 13.11(a) at 3–516.

◼ While the applicable test is not "but for," as IHC argues, *McKean* requires more of a causal connection than the phraseology of the inquiry to the medical panel may suggest. The record reveals that despite the imprecise phrasing of the causation question submitted to the medical panel, the ALJ, after examining the panel's report, applied the correct legal standard in determining causation. In its report submitted to the Industrial Commission, the medical panel arrived at a conclusion, based on its medical expertise, that Taylor's September 1989 surgery was 70% the result of the March 1987 industrial injury and 30% the result of the April 15, 1989, incident in lifting the baby. This is hardly the immaterial causal link IHC fears the ALJ's question might have elicited. Such a conclusion was entirely within the authority of the medical panel. Relying upon this medical conclusion, the ALJ then went on to apply the compensability test as described by Larson. *See* 1 Larson, § 13.-11(a) at 3–517. The applicable test includes an analysis of the facts surrounding the subsequent injury and analysis of the connection between the subsequent injury and the original compensable industrial injury. Determinations regarding factual circumstances surrounding an industrial injury must be ruled on by the ALJ. *Cf. Price River Coal Co.*, 731 P.2d at 1084 ("It is not the role of the medical panel to resolve conflicts in the factual evidence regarding the injured party's activities.").

In submitting to the medical panel a broad request for medical information and opinion on the issue of medical causation, while reserving for herself the ultimate determination on the narrower issue of legal causation, the ALJ acted in accordance with the rules enunciated in *Price River Coal Co.* and *McKean*. We therefore see no prejudicial error in the submission of the question, as phrased, to the medical panel.

### MEDICAL PANEL'S ALLEGED IMPROPER ASSUMPTION OF FACTS

Lastly, IHC claims the medical panel acted beyond its authority in assuming facts not in evidence, weighing facts, and acting as factfinder. Specifically, IHC claims that, contrary to the evidence and Taylor's own testimony, the medical panel determined that Taylor did not actually pick up the child in the April 15, 1989, lifting incident.

◼ As discussed previously, the role of the medical panel is controlled by statute and administrative rule. The Industrial Commission "may refer the medical aspects of the case to a medical panel appointed by the commission." Utah Code Ann. § 35–1–77 (1990). While the medical panel is "responsible to make findings regarding disputed medical aspects of a compensation claim," Utah Admin.Code R490–1–1(F) (1991), the role of the medical panel is limited. *IGA Food Fair v. Martin*, 584 P.2d 828, 830 (Utah 1978). In no sense may the medical panel act as "factfinder" in the same way the ALJ ultimately finds facts. *Price River Coal Co. v. Industrial Comm'n*, 731 P.2d 1079, 1084 (Utah 1986).[7]

7. Section 35–1–77, rule 490–1–1(F), and some reported decisions refer to the medical panel making "findings" about the medical aspects of a case. *See, e.g., Anderson v. Dominic Elec.*, 660 P.2d 241, 242 (Utah 1983) (commission adopted panel's "findings" as its own). However, the term, as employed in those authorities, must be distinguished from "findings" in its term-of-art sense, which refers to the nondelegable duty of the ALJ and Commission to "find the facts" or make "findings of fact." Section 35–1–77(2)(d) illustrates this distinction:

The commission may base its finding and decision on the report of the panel, medical director, or medical consultants, but is not bound by the report if other substantial con-

flicting evidence in the case supports a contrary finding.

*See also Pittsburgh Testing Lab. v. Keller*, 657 P.2d 1367, 1371–72 (Utah 1983) (decision and findings of Commission upheld where, despite contrary "findings" of the medical panel, competent and comprehensive medical evidence in record supported Commission's finding that there was causal connection between distress at place of work and worker's heart attack four days later); *Greyhound Lines, Inc. v. Wallace*, 728 P.2d 1021, 1022 (Utah 1986) (notwithstanding medical panel finding that worker's condition needed medical treatment for three months after accident, Industrial Commission's finding that worker's condition stabilized 23 months

Nor may the panel base its conclusions on the assumption of facts not in evidence. *See Utah Packers, Inc. v. Industrial Comm'n*, 24 Utah 2d 230, 469 P.2d 500, 503 (1970). Finally, the medical panel may not, except in limited circumstances, assess the credibility of the claimant's testimony. *See Zimmerman v. Industrial Comm'n*, 785 P.2d 1127, 1133 (Utah App.1989).

■ IHC points to the medical panel's statement in its report that on April 15, 1989, Taylor did not actually pick up the child, claiming the panel's statement directly contradicts Taylor's testimony at the hearing. IHC further argues that the medical panel's statement indicates the panel questioned Taylor's credibility in determining which version of her story is valid. Thus, IHC argues, the panel, contrary to Taylor's testimony, minimized the amount of exertion by Taylor on April 15, 1989, thereby improperly limiting the contribution of that incident to Taylor's need for surgery.

We agree with the Industrial Commission's conclusion that this argument appears to be one of semantics. Taylor testified at the hearing that on April 15, 1989, she bent over to pick up the grandchild, lifted him partially out of a walker, but was unable to lift him further or place him back in the walker. In a bent over position, Taylor held the child until his mother relieved her. The medical panel report states:

> It is noted that the records have indicated she picked up the grandchild, but no details as to the weight or size appearing in the record, so that the applicant's current interpretation of the 4 month-old child that she reached out to pick up but did not pick up is probably valid.

However, in its report, the medical panel also stated that "[a]gain on 15 April 1989, she was noted to have turned the wrong way and picked up a grandchild with sudden onset of pain in the lower back radiating again to the right leg." It is clear from the report that the medical panel considered the physician's notes detailing the event as well as Taylor's testimonial version of the event. Apparently, whether Taylor actually picked up the child seems to have played no part in the panel's ultimate conclusion. The panel stated, with our emphasis:

> It would appear that the *intention* to lift a 13-pound child is well within the limits of lifting allowed by her treating physician ... so that this probably should not be considered a breach of treatment recommendations.

The panel clearly considered other evidence in reaching its conclusion, such as Taylor's continuing treatment for back discomfort from the time of the industrial accident in 1987 up to April of 1989, and a similar incident resulting in identical symptoms in October of 1987.[8] The medical panel acted within its authority in considering all evidence pertaining to the April 1989 lifting incident and forming a medical conclusion based on that evidence. In forming its conclusion, the medical panel made no inappropriate credibility determinations, nor did it engage in factfinding beyond its authority. Rather, it is clear from the record that the medical panel based its determination on medical evidence in the record: Even if the child was actually lifted, Taylor's act of lifting the child was not outside the range of activity allowed by her treating physician. Thus, the question whether Taylor actually lifted the child became essentially irrelevant, and the medical panel could properly conclude that the prior industrial injury, and not any actual lifting of the child—much less a mere bending incident to an attempted lifting—was the primary cause of the second injury.

after accident and that worker was thus eligible for temporary total disability benefits during that period was supported by evidence).

**8.** The medical panel's review of Taylor's file revealed that "the pattern of her difficulty has been well confirmed, with low back pain radiating to the right leg, particularly to the small toes on the right." The panel noted that an incident similar to the April 15, 1989, lifting incident occurred in October of 1987 when she " 'moved wrong,' and had extreme back pain." Apparently Taylor was at work, and, turning to get out of a chair, she "felt acute onset of lumbosacral back pain with radiating pain into the foot and leg."

## CONCLUSION

Because IHC failed to properly marshal the evidence in support of the ALJ's findings, we decline to disturb those findings as ratified by the Industrial Commission. The question submitted by the ALJ to the medical panel concerning medical causation constituted a broad request for information in the form of a medical opinion. Relying upon the medical panel's more focused and well-supported conclusion, the ALJ applied the correct standard in making the ultimate determination concerning medical and legal causation. Finally, IHC's arguments concerning the medical panel's alleged inappropriate assumption of facts not in evidence, weighing of facts, and finding of facts are without merit. The medical panel acted well within its authority in formulating its opinion regarding medical causation. For the foregoing reasons, the order of the Industrial Commission denying IHC's motion for review is affirmed.

BILLINGS and RUSSON, JJ., concur.