2002 UT App 10

**McKESSON CORPORATION and C.W. Reese Company, Petitioners,**

v.

**Labor Commission and Robert P. Lieberman, Respondents.**

No. 20000800–CA.

Court of Appeals of Utah.

Jan. 17, 2002.

Henry K. Chai, II, and Kristy L. Bertelsen, Blackburn & Stoll LC, Salt Lake City, for Petitioners.

Alan Hennebold, Labor Comission, Salt Lake City, for Respondent Labor Commission.

Robert P. Lieberman, Salt Lake City, Respondent Pro Se.

Before JACKSON, P.J., DAVIS, and THORNE, JJ.

## OPINION

THORNE, Judge.

¶ 1 Appellant McKesson Industries Corporation (McKesson) appeals from an order of the Utah Labor Commission (Commission) awarding Robert Lieberman workers' compensation benefits. We affirm.

## BACKGROUND

¶ 2 In 1995, while working in a warehouse owned and operated by McKesson, Lieberman was struck in the head by a fourteen pound case that fell six or seven feet. The impact caused Lieberman to suffer two herniated cervical disks. In an attempt to repair the damage from the accident, Lieberman subsequently underwent a variety of surgical procedures, including both the installation of a plate, and disk fusion.

¶ 3 During a scheduled follow-up visit, Lieberman's doctor noted that

Rob is now three and one-half months post-op ACD, allograft interbody fusion and plate fixation C5–6–7. He is working, but the company has basically put him back to regular duty with repetitive overhead reaching and lifting, contrary to my restrictions which said no overhead repetitious lifting. In the past several days this has aggravated his neck pain.

¶ 4 In September 1996, Lieberman entered into an agreement with McKesson through which McKesson agreed to pay Lieberman $13,965.35 in temporary total disability, $10,707.84 in total permanent partial disability for a 12% whole person impairment, and $10,392.04 for Lieberman's medical expenses. However, on April 21, 1997, McKesson's doctor noted that Lieberman still suffered "neck pain and stiffness when he has to look upward or when using his arms and hands above his head."

¶ 5 In July 1997, Lieberman petitioned the Commission for a hearing seeking payment of additional medical expenses and further disability compensation. The Commission granted the petition, and, following a hearing on the petition, an Administrative Law Judge (ALJ) found that Lieberman did suffer from ongoing symptoms resulting from the accident and ordered McKesson to pay Lieberman an additional $4,550.96 as compensation for his temporary total disability.

¶ 6 By February 1999, Lieberman's doctor suspected that the attempt to fuse the disks had failed, but opined that Lieberman's chronic pain was likely the result of soft-tissue fatigue caused by his new job.

¶ 7 On May 22, 1999, while pulling himself into his pickup truck, Lieberman hit his head on the truck's door frame aggravating his neck injury. Lieberman was subsequently reexamined by Dr. Hood, who determined that Lieberman had exacerbated his earlier injury and recommended additional surgery. McKesson denied responsibility for any costs

associated with the aggravation to Lieberman's neck injury.

¶ 8 Lieberman petitioned the Commission for another hearing, seeking an order requiring McKesson to pay medical expenses resulting from treatment of the subsequent injury, other necessary medical care, and additional temporary total disability compensation. Following a hearing, the ALJ determined that "the incident of May 22, 1999 failed to constitute an event that would relieve McKesson of liability for Mr. Lieberman's current disability and medical needs."

¶ 9 The ALJ ordered McKesson to pay Lieberman's medical costs, and awarded Lieberman temporary total disability compensation. McKesson sought review of the ALJ's decision through the Labor Commission's Appeals Board. However, after reviewing McKesson's claims, the Board affirmed the ALJ's order. McKesson now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 McKesson argues that the Commission relied upon an incorrect legal standard in determining Lieberman's eligibility for additional workers' compensation benefits. This argument presents a question of law, which we review for correctness. *See Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 13, 7 P.3d 777.

■ ¶ 11 McKesson also argues that the Commission erred in concluding that Lieberman's September 25, 1995 accident was the cause of his May 22, 1999 injuries. "[T]he Legislature has granted the Commission discretion to determine the facts and apply the law to the facts in all cases coming before it. As such, we must uphold the Commission's determination ... unless the determination exceeds the bounds of reasonableness and rationality...." *AE Clevite, Inc. v. Labor Comm'n*, 2000 UT App 35, ¶ 7, 996 P.2d 1072 (citation and footnote omitted); *see also* Utah Code Ann. § 34A–1–301 (1997) ("The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers."). Further, we resolve all doubts regarding an employee's right to compensation in favor of the employee. *See AE Clevite*, 2000 UT App 35 at ¶ 7.

## ANALYSIS

¶ 12 McKesson first argues that the Commission failed to apply the causation analysis mandated by *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), when it reviewed Lieberman's petition. We disagree.

■ ¶ 13 When an individual experiences a subsequent aggravation to an injury that arose "out of and in the course of employment," Utah Code Ann. § 34A–2–401 (1997), the question of additional compensation will hinge on whether the " 'subsequent injury is ... a *natural result* of [the accident underlying the] compensable primary injury.' " *Intermountain Health Care v. Board of Rev.*, 839 P.2d 841, 845 (Utah Ct.App.1992) (quoting *Mountain States Casing Servs. v. McKean*, 706 P.2d 601, 602 (Utah 1985)).

¶ 14 McKesson argues that *Allen* supersedes the standard articulated above, however, McKesson misconstrues both the holding of *Allen* and the thrust of *Intermountain*.

■ ¶ 15 In *Allen*, the Utah Supreme Court set out to clarify the requirements of Utah's workers' compensation law. *See Allen*, 729 P.2d at 18. After thoroughly examining available case law, the court articulated three elements that a claimant must satisfy by a preponderance of the evidence to qualify for workers' compensation benefits. *See id.* at 18–25. First, the claimant must show that the injury underlying the claim occurred by accident. *See id.* at 18, 22. Second, assuming the claimant has established a connection between the injury and an accident, the claimant must then establish that the accident is the legal cause of the injury.[1] *See id.* at 25. In other words, the claimant must show that the injury arose out of and in the course of exertions that were, at a minimum,

---

1. In most cases, "a usual or ordinary" exertion is sufficient to meet the legal causation requirement; however, "a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986).

usual and ordinary for the claimant's employment. *See id.* Finally, should the claimant demonstrate that the exertion underlying his accident was "sufficient to support compensation," i.e. the exertion was "usual or ordinary" for the job, *id.* at 25–26, the claimant must show that the workplace accident was the medical cause of the injury. *See id.*

¶ 16 Once the claimant has established that his injuries arose from an accident, and that "a sufficient causal connection [exists] between [his] disability and the working conditions," *id.* at 25, the claimant has met the *Allen* requirements, and thus must be compensated for his workplace injuries. Moreover, once the injury is determined to be a compensable injury, the employer is responsible for "all medical[ costs] resulting from that injury." *McKean,* 706 P.2d at 602.

¶ 17 Here, there is no dispute concerning the compensability of Lieberman's workplace injury, rather, the dispute centers on his subsequent aggravation of the compensable workplace injury. When a claimant suffers a subsequent aggravation to a compensable workplace injury, the question of whether the subsequent injury is compensable turns upon the standard articulated in *Intermountain. See Intermountain,* 839 P.2d at 845.

¶ 18 To qualify for additional benefits after suffering a subsequent aggravation to a compensable workplace injury, a claimant need only prove that his "subsequent injury ... [is] a *natural result* of [his] compensable primary injury."[2] *Id.* Furthermore, a claimant need not " 'show that his original tragedy was the *sole cause* of [his] subsequent injury.' " *Id.* at 845 (quoting *McKean,* 706 P.2d at 602) (emphasis added). Indeed, if the claimant can show that " 'the initial work-related accident [is merely] a *contributing cause*' of the subsequent injury," *id.* at 845 (quoting *McKean,* 706 P.2d at 602), the claimant has met his burden.

---

2. Stated more precisely, the claimant must establish that the subsequent aggravation is causally linked to the primary compensable injury. *See Intermountain Health Care v. Board of Rev.,* 839 P.2d 841, 846 (Utah Ct.App.1992).

3. Of course, responsibility for costs resulting from subsequent aggravations to compensable

¶ 19 McKesson asserts, however, that *Allen* demands the application of a substantively different standard to determine whether a claimant is eligible for additional workers' compensation benefits to cover the costs of a subsequent aggravation to a compensable workplace injury. McKesson argues that Lieberman's compensable primary injury created a preexisting condition, and, as stated by the supreme court, "where the claimant suffers from a preexisting condition which contributes to the injury, *an unusual or extraordinary exertion* is required to prove legal causation." *Allen,* 729 P.2d at 26 (emphasis added). McKesson's reliance upon this distinction is misplaced.

¶ 20 In *Allen,* a claimant who suffered from non-compensable preexisting back problems was denied workers' compensation benefits for injuries to his back that he claimed resulted from a workplace accident. *See id.* at 17. On appeal, the supreme court reversed the Commission's decision, stating that "emphasis on prior injuries is not determinative of whether an accident occurred." *Id.* at 27. Rather, the court continued, preexisting conditions are more appropriately analyzed for their impact on the question of legal causation. *See id.* at 27–28. To meet the legal causation requirement, a claimant with a preexisting condition implicated in the claim must demonstrate that his workplace efforts "exceeded the exertion that the average person undertakes in nonemployment life." *Id.*

¶ 21 However, whether or not a claimant suffers from a preexisting condition, once benefits are properly awarded, the employer is responsible for "all medical[ costs] resulting from [the compensable] injury," including costs resulting from subsequent aggravations to the compensable workplace injury.[3] *McKean,* 706 P.2d at 602.

---

workplace injuries is not automatic. The claimant must first demonstrate that the subsequent aggravation is the "natural result" of the primary workplace injury or accident. *Mountain States Casing Servs. v. McKean,* 706 P.2d 601, 602 (Utah 1985).

¶ 22 We conclude that it would be inappropriate to examine subsequent aggravations of compensable work-related injuries by applying the same exacting standard that we apply when determining the compensability of primary workplace injuries involving preexisting conditions.

¶ 23 Accordingly, if the claimant successfully establishes that the subsequent injury is the "natural result" or consequence of a compensable workplace injury, the claimant is eligible for additional workers' compensation benefits. *McKean*, 706 P.2d at 602.

¶ 24 In the instant case, the Commission accepted as undisputed the fact that Lieberman had suffered a compensable workplace injury to the vertebra of his neck in 1995. The Commission then analyzed "the facts surrounding [Lieberman's] subsequent injury and . . . the connection between the subsequent injury and the original compensable industrial injury," *Intermountain*, 839 P.2d at 846, to determine whether his subsequent injury was the "natural result" of his compensable primary injury. *Id.* Therefore, we conclude the Commission properly analyzed Lieberman's claim under the standard set forth in *Intermountain Health Care v. Board of Review*, 839 P.2d 841, 845 (Utah Ct.App.1992).

¶ 25 McKesson next argues that the Commission erred in concluding that Lieberman's compensable workplace injury was the cause of his subsequent aggravating injury. This court will not overturn the Commission's factual findings "unless they are arbitrary and capricious, or wholly without cause, or contrary to the one [inevitable] conclusion from the evidence." *Large v. Industrial Comm'n*, 758 P.2d 954, 956 (Utah Ct.App. 1988), 758 P.2d at 956 (alteration in original) (quotations and citations omitted). Additionally, we grant the Commission a measure of discretion when applying the legal standard to a given set of facts. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 182 (Utah 1997); *see also AE Clevite*, 996 P.2d 1072, 2000 UT App 35 at ¶ 6 (stating, "we must uphold the Commission's determination . . . unless the determination exceeds the bounds of reasonableness and rationality").

¶ 26 Here, the Commission accepted as undisputed the existence of Lieberman's compensable workplace injury.[4] The Commission then determined that the available medical evidence pointed to Lieberman's compensable workplace injury as the medical cause of his subsequent aggravating injury. Finally, after examining the facts surrounding Lieberman's subsequent injury, as well as "the connection between [his] subsequent injury and [his] original compensable industrial injury," *Intermountain*, 839 P.2d at 846, the Commission determined that Lieberman's subsequent injury occurred after a "simple accident brought on by ordinary error and unintentional miscalculation." Thus, the Commission effectively concluded that Lieberman's subsequent injury was the "natural result" of his compensable workplace injury, and that the circumstances surrounding Lieberman's subsequent injury did not relieve McKesson of the financial responsibility for the injury.

¶ 27 We have reviewed the record and conclude that the evidence supports the Commission's findings. Lieberman clearly suffered a grave compensable workplace injury to his neck in 1995. Additionally, medical expert opinion proffered by both sides suggested that Lieberman's injury never properly healed, and that a subsequent aggravation of that injury was not unexpected. Finally, nothing in the record suggests that Lieberman's subsequent injury resulted from unreasonable conduct; therefore, we cannot say that the Commission's findings were "wholly without cause, or contrary to the one [inevitable] conclusion from the evidence." *Large*, 758 P.2d at 956 (alteration in original) (quotations and citations omitted).

¶ 28 We also conclude that the Commission had an adequate factual basis upon which to determine that Lieberman's subsequent reinjury was the "natural result" of his compensable workplace injury. Therefore, the Commission properly determined that McKesson was responsible for the costs associated with the re-injury.

4. The Commission adopted the findings of the ALJ.

## CONCLUSION

¶ 29 The Commission properly examined Lieberman's petition for additional workers' compensation benefits under the standard set forth in *Intermountain Health Care v. Board of Review,* 839 P.2d 841, 845–46 (Utah Ct. App.1992). Additionally, the Commission acted within the scope of its discretion in determining that Lieberman's subsequent injury was the natural result of his earlier compensable primary injury.

¶ 30 Accordingly, we affirm the Commission's findings and conclusions.

¶ 31 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.