2013 UT App 301

Angela K. OLIVER, Petitioner,

v.

LABOR COMMISSION AND EMPLOYERS' REINSURANCE FUND, Respondents.

Safeway, Petitioner,

v.

Angela K. Oliver, Respondent.

No. 20121069–CA.

Court of Appeals of Utah.

Dec. 27, 2013.

Gary E. Atkin and K. Dawn Atkin, Salt Lake City, Attorneys for Petitioner Angela K. Oliver.

Brad J. Miller, Attorney for Petitioner Safeway.

Alan L. Hennebold, Salt Lake City, and Jaceson R. Maughan, Attorneys for Respondent Labor Commission.

Edwin C. Barnes and Robert D. Andreasen, Salt Lake City, Attorneys for Respondent Employers' Reinsurance Fund.

Judge GREGORY K. ORME authored this Opinion, in which Judges CAROLYN B. McHUGH and STEPHEN L. ROTH concurred.

### Opinion

ORME, Judge:

¶ 1 In this consolidated case, Angela K. Oliver (Employee) [1] seeks to overturn the decision of the Utah Labor Commission Appeals Board denying her claim for permanent total disability benefits. Safeway, which employed Employee years ago, challenges the composition and impartiality of the medical panel. We set aside the Board's order and direct it to reconsider Employee's claim in accordance with the guidance offered in this opinion.

### BACKGROUND

¶ 2 In March 1987, Employee injured her back in the course of her employment with

---

1. Employee passed away during the pendency of this proceeding, but the parties agree that the claim for any benefits accruing prior to her death survives.

Safeway. As a result of this injury, a doctor assigned Employee permanent work restrictions that prevented Employee from returning to her job at Safeway. However, Employee underwent vocational rehabilitation and began working as a nurse in 1991. In April 2004, Employee again injured her back while assisting a patient. Employee underwent fusion surgery in June 2004 and was assigned further permanent work restrictions that prevented her from returning to work as a nurse.

¶ 3 Employee filed a workers' compensation claim based on the April 2004 injury. This claim was referred to Dr. Alan Goldman as a one-doctor medical panel. The panel concluded that Employee's impairment was caused by preexisting degenerative injuries, at least some of which were related to her 1987 injury sustained while working for Safeway. Her claim based on the 2004 incident was denied because that incident—largely in view of the medical panel's conclusion—was not deemed to be the legal cause of her back condition.

¶ 4 Employee then filed this claim based on the theory that her current disability was the result of her 1987 injury sustained while employed by Safeway. The Administrative Law Judge (ALJ) assigned to the case held an evidentiary hearing and referred the "medical aspects of this case to a Commission medical panel for evaluation." Dr. Goldman was again the sole member of the medical panel. The panel responded affirmatively to the ALJ's question, "Is there a medically demonstrable causal connection between the petitioner's low back condition and the March 11, 1987 industrial accident?" Safeway objected to the panel's report on the basis that the panel was not impartial because it consisted only of Dr. Goldman, who had already opined on the same issue in the previous case. The ALJ overruled Safeway's objection to the medical panel report and determined that Employee's "current low back condition arose out of her March 11, 1987 industrial accident." Safeway appealed to the Board, arguing that the ALJ erred in failing to appoint an impartial medical panel and in finding permanent total disability. The Board issued an order setting aside the

ALJ's decision and remanding for further proceedings, including referral to a new medical panel.

¶ 5 The ALJ again heard the case and again referred it to a medical panel headed by Dr. Goldman, albeit with an instruction that he could enlist others to join him. The panel, now consisting of Dr. Goldman and an anesthesiologist with a specialty in pain management, determined that Employee had "serious aggravations" to her lower back following her 1987 injury. The panel declared:

> [I]t is virtually impossible to determine how much of [Employee's] current pain can be attributable to the industrial accident of 1987 in question, although we do feel that there is, to some degree, a causal connection between [Employee's] low back condition and the 03–11–1987 industrial injury.

The ALJ subsequently decided that while there was some connection between the 1987 and 2004 injuries, because Employee "has the ability to learn new tasks as demonstrated by her vocational history," she was "not permanently and totally disabled as the result of the March 11, 1987 industrial accident."

¶ 6 Employee then appealed to the Board, asking it to review the ALJ's denial of permanent and total disability compensation. The Board reviewed the case under section 34A–2–413 of the Utah Workers' Compensation Act, see Utah Code Ann. § 34A–2–413(1) (LexisNexis 2011) (delineating the requirements for an employee to qualify for permanent total disability compensation), and found that Employee's 1987 industrial injury was not the "direct cause" of her subsequent 2004 injury. The Board also noted that while the medical panel "added a second member, it was not 'new' because it did not consist of entirely different members from the original panel." However, because the Board denied Employee permanent total disability benefits, it considered "it unnecessary to address any problems with the medical panel or Safeway's contention that the panel was not impartial in the proceedings on remand." Employee requested reconsideration of this decision, noting that section 34A–2–

413 was not in effect at the time of Employee's 1987 accident.

¶ 7 On reconsideration, the Board conceded that it had applied a legal standard that was enacted after the initial workplace accident and reevaluated Employee's claim in light of what the Board believed to be the correct legal standard, namely whether, in the Board's words, Employee's 1987 accident "prevented her from performing work of the same general character that she was doing for Safeway or any other work she could do or learn to do." *See United Park City Mines Co. v. Prescott*, 15 Utah 2d 410, 393 P.2d 800, 801–02 (1964). The Board then found that because Employee had undergone vocational rehabilitation following the 1987 accident and worked as a nurse for almost fourteen years thereafter, she was not entitled to permanent total disability compensation. Employee seeks judicial review of that decision.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Employee argues that the Board applied the wrong legal standard in determining her eligibility for permanent total disability benefits. "Whether the [Board] applied the correct legal standard in making its determination is ... a question of law, which we review for correctness." *A & B Mech. Contractors v. Labor Comm'n*, 2013 UT App 230, ¶ 15, 311 P.3d 528.

## ANALYSIS

■ ¶ 9 Employee asserts that the Board applied an incorrect legal standard when it found that she was not permanently and totally disabled as a result of her 1987 industrial injury. The Board applied the standard originally articulated in *United Park City Mines Co. v. Prescott*, 15 Utah 2d 410, 393 P.2d 800 (1964). With regard to permanent total disability claims, the *Prescott* court stated as follows:

[A] workman may be found totally disabled if by reason of the disability resulting from his injury he cannot perform work of the general character he was performing when injured, or any other work which a man of

his capabilities may be able to do or to learn to do. . . .

*Id.* at 801–02. The Board interpreted this standard to mean that because Employee "was able to obtain the necessary training and work [as a nurse] for many years following the 1987 accident," she was forever barred from bringing permanent total disability claims based on that accident. While it is true that Employee would have been barred under this rule from bringing a claim while she was actually employed as a nurse, we disagree that her return to the workforce forever precluded her from claiming permanent total disability based on her original compensable injury.

¶ 10 Our decision in *Intermountain Health Care, Inc. v. Board of Review*, 839 P.2d 841 (Utah Ct.App.1992), supports this conclusion. In *Intermountain*, an employee of Intermountain Health Care suffered a compensable back injury in—coincidentally—1987. *Id.* at 842. The injury occurred while the employee was lifting a desk at the request of her supervisor. *Id.* The employee was seen by several specialists and treated conservatively over the course of approximately one year. *Id.* The employee subsequently found new employment at Interwest Medical and worked there from October 1988 until April 1989. *Id.* However, she injured her back again in April 1989 while bending over to pick up her four-month-old grandchild. *Id.* at 842–43. Despite her ability to return to work in a position "of the general character [she] was performing when injured," *see Prescott*, 393 P.2d at 801–02, we nonetheless concluded that the ALJ properly found that her original 1987 industrial injury was the cause of the subsequent aggravation of that injury in 1989, *Intermountain*, 839 P.2d at 847–48. Thus, the mere occurrence of vocational rehabilitation and a reentry into the workforce in *Intermountain* did not forever bar a new workers' compensation claim based on the employee's prior industrial accident.

■ ¶ 11 Rather, when an individual experiences a subsequent aggravation of an initial compensable workplace injury arising "out of or in the course of his employment," Utah

Code Ann. § 35–1–45 (Michie Supp.1987),[2] the question of additional compensation hinges on whether the " 'subsequent injury is ... a *natural result* of a compensable primary injury.' " *See Intermountain*, 839 P.2d at 845 (emphasis in original) (quoting *Mountain States Casing Servs. v. McKean*, 706 P.2d 601, 602 (Utah 1985) (per curiam)). Here, there is no dispute that Employee had a compensable workplace accident in 1987. Indeed, workers' compensation benefits were paid to Employee between 1987 and 1989. The key consideration, then, is whether Employee's subsequent 2004 injury is compensable as being a "natural result" of the original 1987 injury.

■ ¶ 12 Employee asserts—and the emphasis is hers—that a "basic tenet of the applicable 1987 law was that once an [e]mployee is injured by an industrial accident, expenses and impairments arising from that injury are compensable" if "the pre-existing injury is *a* cause of the ultimate disability."[3] Indeed, Utah courts have established that "once benefits are properly awarded, the employer is responsible for 'all medical[ costs] resulting from [the compensable] injury,' including costs resulting from subsequent aggravations to the compensable workplace injury." *McKesson Corp. v. Labor Comm'n*, 2002 UT App 10, ¶ 21, 41 P.3d 468 (alterations in original) (quoting *McKean*, 706 P.2d at 602). However, "responsibility for costs resulting from subsequent aggravations to compensable workplace injuries is not automatic. The claimant must first demonstrate

that the subsequent aggravation is the 'natural result' of the primary workplace injury or accident." *Id.* ¶ 21 n. 3 (quoting *McKean*, 706 P.2d at 602). "Stated more precisely, the claimant must establish that the subsequent aggravation is causally linked to the primary compensable injury." *Id.* ¶ 18 n. 2.

¶ 13 The "natural result" inquiry is properly conducted through "an analysis of the facts surrounding the subsequent injury and analysis of the connection between the subsequent injury and the original compensable industrial injury." *Intermountain*, 839 P.2d at 846. And the relationship between the two events must be established by a preponderance of the evidence. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 23 (Utah 1986) ("[T]he standard to prove causal connection is [by a] preponderance of the evidence."); *Large v. Industrial Comm'n*, 758 P.2d 954, 956 (Utah Ct.App.1988) (same).

¶ 14 We conclude that the Board applied an incorrect legal standard in concluding that Employee was not permanently and totally disabled as a result of her 1987 industrial injury. As more fully explained above, the key to properly making this determination is not whether Employee went back to work after 1987 but whether her 2004 injury was a natural result of the 1987 injury. We are not best suited to make this determination in the first instance. Rather, the Board is in the best position to analyze the "facts surrounding [Employee's] subsequent injury and ... the connection between the subsequent inju-

---

2. We cite the codified version of the statute in effect at the time of Employee's original compensable injury.

3. In making this argument, Employee appeals to the logic of section 35–1–69 of the Utah Code, which was in effect at the time of the 1987 injury. *See Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1180–81 (Utah 1985) (noting that section 35–1–69 applies where a preexisting injury is aggravated *"to any degree")* (emphasis in original). Section 35–1–69 then provided as follows:

   (1) If an employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which either compensation or medical care, or both, is provided by this chapter that results in permanent incapacity which is substantially greater than he

would have incurred if he had not had the pre-existing incapacity, or which aggravates or is aggravated by such pre-existing incapacity, compensation ... shall be awarded on the basis of the combined injuries....

   For purposes of this section, ... *any* aggravation of a pre-existing injury, disease, or congenital cause shall be deemed "substantially greater"....

Utah Code Ann. § 35–1–69 (Michie Supp.1987) (emphasis added). We agree that section 35–1–69, as the law in effect in 1987, would apply if we were faced with an apportionment of payment between those responsible for preexisting and new injuries, but the question before us is whether there was permanent and total disability in 2004 as a result of Employee's 1987 industrial injury.

ry and the original compensable industrial injury." *Intermountain*, 839 P.2d at 846.

## CONCLUSION

¶ 15 The Board's decisions were made in the context of a significant legal error as to the rule governing the claimed aggravation of a primary compensable workplace injury. Therefore, we set the Board's order aside and direct it to reconsider Employee's claim with reference to the "natural result" standard and the guidance offered in this opinion.[4]

---

4. In view of our disposition, we do not reach the other issues before us. We do recognize, however, that Safeway argues in its petition for review that a *new* medical panel should have been appointed when the ALJ was so directed, not the same medical panel with leave to invite the participation of additional doctors. The Board recognized the problematic nature of a medical panel that was not actually new, but found it unnecessary "to address any problems with the medical panel or Safeway's contention that the panel was not impartial in the proceedings on remand." While we do not otherwise address this issue, we note that the Board may find it prudent to renew its direction that a new medical panel be appointed to consider the causal link between Employee's 1987 and 2004 injuries. It may well be that Dr. Goldman's objectivity in the case at hand is compromised by his opinion expressed in the prior case to the effect that Employee's 2004 injures were attributable to the 1987 accident.

