IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| E.J. Sutton, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100830-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Byer Excavating, Inc., a Utah | ) | (February 2, 2012) |
| corporation; Lowell Construction Co., a | ) | |
| Utah corporation; James H. Diamond | ) | |
| Concrete, a Utah corporation; and John | ) | 2012 UT App 28 |
| Does 1 through 3, | ) | |
| | ) | |
| Defendants and Appellee. | ) | |

-----

Third District, Salt Lake Department, 080911879
The Honorable Robert K. Hilder

Attorneys:     John Edward Hansen and Jonathan H. Rupp, Salt Lake City, for
                     Appellant
                     Stanford P. Fitts, Michael L. Ford, and S. Spencer Brown, Salt Lake City,
                     for Appellee

-----

Before Judges Davis, Roth, and Christiansen.

CHRISTIANSEN, Judge:

¶1      Plaintiff E.J. Sutton appeals the district court's grant of summary judgment in
favor of defendant Byer Excavating, Inc. (Byer Excavating).  We affirm.

BACKGROUND[1]

¶2     In the summer of 2007, two separate houses were being built on adjacent lots 173 and 174 on White Pine Canyon Road in Park City, Utah. M.H. Allred Construction performed as the general contractor on Lot 174, with both Byer Excavating and R.W. Construction performing as subcontractors. Byer Excavating employed Bob Miles to operate its trackhoe. R.W. Construction employed Sutton as a framing superintendent.

¶3     On August 1, 2007, Lowell Construction Company (Lowell Construction) received a load of rebar at Lot 173 for the housing project on that lot. Miles was performing clearing and excavation work on Lot 174 when Sutton asked Miles to discontinue his excavation work on Lot 174 to help unload Lowell Construction's rebar for Lot 173 using Byer Excavating's trackhoe. Byer Excavating had not been hired to perform work on Lot 173 and had no prior arrangement with Lowell Construction to unload the rebar. Although Miles was reluctant to stop his own work, he agreed to help Lowell Construction unload the rebar and left the area where he was working to do so. To help unload the rebar, Sutton rigged the load of rebar on the trackhoe and later testified that he acted as "kind of a spotter." Don Jones worked as Lowell Construction's superintendent on Lot 173 and was in charge of unloading the rebar for the housing project on Lot 173. While Miles was operating the trackhoe, the unstable load struck and injured Sutton. Byer Excavating was not aware that Miles used the trackhoe to assist Lowell Construction until after the accident occurred.

¶4     Following the accident, Sutton sued several defendants, including Byer Excavating.[2] Subsequently, Byer Excavating filed a motion for summary judgment. Following briefing and oral argument, the district court granted the motion, ruling that "there [were] no genuine issues of material fact and Byer [Excavating] . . . [wa]s entitled to judgment in its favor as a matter of law that . . . Miles was acting outside the course and scope of his employment for Byer [Excavating] . . . at the time of the accident." Sutton now appeals.

---

[1]Because we are reviewing a grant of summary judgment, we recite "'the facts and all reasonable inferences drawn therefrom in the light most favorable to [Sutton,] the nonmoving party.'" *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted).

[2]This appeal focuses solely on Byer Excavating.

ISSUE AND STANDARD OF REVIEW

¶5     Sutton argues that the district court improperly granted summary judgment in Byer Excavating's favor.  "An appellate court reviews a trial court's 'legal conclusions and ultimate grant or denial of summary judgment' for correctness and views 'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'"  *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations omitted).

ANALYSIS

¶6     To be entitled to summary judgment, the movant must establish "both that there is no material issue of fact *and* that the movant is entitled to judgment as a matter of law."  *Id.* ¶ 10 (citing Utah R. Civ. P. 56(c)).

> A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing . . . that there is no genuine issue of material fact.  Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who . . . "must set forth specific facts showing that there is a genuine issue for trial."

*Id.* ¶ 18 (citation omitted) (quoting Utah R. Civ. P. 56(e)).  In this case, the district court correctly granted summary judgment.  After Byer Excavating demonstrated that no material facts were at issue and that it was "entitled to judgment as a matter of law," Sutton did not dispute any of the material facts that established that Byer Excavating was entitled to summary judgment as a matter of law.  *See id.*

I.  Course and Scope of Employment

¶7     "Under the doctrine of respondeat superior, an employer may be held vicariously liable for the acts of its employee if the employee is [acting] in the course and scope of his employment at the time of the act giving rise to the injury."  *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 8, 197 P.3d 654.  The party asserting vicarious liability must prove three elements (the *Birkner* test), *see generally Birkner v. Salt Lake*

*Cnty.*, 771 P.2d 1053, 1056-57 (Utah 1989), to establish that the employee was acting within the course and scope of his or her employment: (1) "'an employee's conduct must be of the general kind the employee is employed to perform'"; (2) "'the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment'"; and (3) "'the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest.'" *Newman*, 2008 UT 79, ¶ 9 (quoting *Birkner*, 771 P.2d at 1056-57).

> Whether an employee is in the course and scope of his employment under the *Birkner* test presents a question of fact for the fact-finder. Indeed, [s]cope of employment questions are inherently fact bound. Accordingly, scope of employment issue[s] *must* be submitted to a jury whenever reasonable minds may differ as to whether the [employee] was at a certain time . . . within the scope of employment. Summary judgment is proper, then, only when the employee's activity is so clearly within or outside the scope of employment that reasonable minds cannot differ.

> In determining whether reasonable minds might differ about whether an employee is within the course and scope of his employment, the standard to be applied is an objective one. In other words, the standard is not whether *these parties'* minds differ—which they obviously do—but whether reasonable jurors, having been properly instructed by the trial court, would be unable to come to any other conclusion regarding the employee's conduct. If no reasonable juror could come to any other conclusion, summary judgment is appropriate. If, however, reasonable jurors might differ about whether the employee's actions fell within the course and scope of his employment, summary judgment is improper and the issue should go to the jury for determination.

*Id.* ¶¶ 10-11 (alterations and omission in original) (citations and internal quotation marks omitted).

¶8     On appeal, Sutton argues that the following material facts are disputed and, when viewed in Sutton's favor, preclude the entry of summary judgment:  (1) "Byer [Excavating] employees have used Byer [Excavating] equipment to do extra-contractual work on projects, and have used trackhoes to unload rebar"; (2) "Miles was a Byer [Excavating] employee in control of Byer [Excavating-]owned equipment at the time of the accident"; and (3) "Miles'[s] conduct was motivated in part to benefit his employer." However, even considering these facts and the reasonable inferences drawn therefrom in Sutton's favor, Sutton did not dispute other key facts that Byer Excavating presented to establish, as a matter of law, that Miles's conduct in utilizing Byer Excavating's trackhoe to unload rebar for another construction site's project was not "the general kind [of work Miles was] employed to perform." *See id.* ¶ 9.

> [A]n employee's acts or conduct must be generally directed toward the accomplishment of objectives within the scope of the employee's *duties and authority*, or reasonably incidental thereto.  In other words, the employee must be about the employer's business and the duties assigned by the employer, as opposed to being wholly involved in a personal endeavor.

*Birkner*, 771 P.2d at 1057.

¶9     Sutton produced no facts to dispute Byer Excavating's evidence that Miles had never before unloaded rebar using Byer Excavating's trackhoe during his seventeen years of employment with Byer Excavating, that Miles was hired for and performed trackhoe work that consisted of excavation and earthwork, and that his work did not include unloading objects.  Additionally, Sutton's affidavit, which stated that other Byer Excavating employees had used Byer Excavating's trackhoes to unload objects, does not raise a material issue of disputed fact because his affidavit did not assert that Miles himself had ever performed these unloading tasks.[3]  Furthermore, Sutton failed to produce any evidence to dispute Byer Excavating's evidence that Miles had never before left the job site he was assigned in order to assist on an unrelated project on a different job site or produce any evidence that Byer Excavating had ever authorized

---

[3]Byer Excavating admitted that other employees unloaded objects but stated, without dispute, that it had a separate group of employees that unloaded objects.

such use of its equipment. Thus, given the undisputed facts, reasonable minds could not differ on the issue of whether Miles's conduct was "generally directed toward the accomplishment of objectives within the scope of [Miles]'s duties and authority, or reasonably incidental thereto." *See id.* Because Byer Excavating established that Sutton's claim failed, as a matter of law, when he could not establish one element of the *Birkner* test, no reasonable jury could conclude that Miles was acting within the course and scope of his employment with Byer Excavating at the time of the accident. Therefore, the district court properly granted summary judgment in favor of Byer Excavating.

## II. Apparent Authority

¶10     Sutton also argues that the district court erred in granting summary judgment in Byer Excavating's favor because Miles had apparent authority to act for Byer Excavating. Sutton correctly notes that Utah law allows for vicarious liability "for the acts of an employee under the theory of apparent authority" when "an employer . . . conduct[s] itself in such a way as to clothe its employee with apparent authority to perform the torts committed and there [was] reasonable reliance on that apparent authority on the part of the injured party." *Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995). Thus, for Byer Excavating to be entitled to summary judgment it must demonstrate that the undisputed facts establish that its actions did not clothe Miles with the authority to leave the job he was hired to perform and unload the rebar for another contractor on another job site or that Sutton did not reasonably rely on that apparent authority.

¶11     On appeal, Sutton does not argue that any specific fact was disputed, but instead, Sutton merely recites facts and argues that they establish apparent authority. Because "an agent's apparent . . . authority flows only from the acts and conduct of the principal" and not the acts of the agent, we examine only the facts related to Byer Excavating's actions to determine whether the undisputed facts establish apparent authority. *See Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1095 (Utah 1988).

¶12     First, Sutton argues that the undisputed fact that Miles operated Byer Excavating's trackhoe without constant monitoring by a Byer Excavating supervisor equated to Byer Excavating's recognition that Miles had the independent authority to leave his job and help another contractor unload rebar for a different construction site's project. Not only did Sutton fail to dispute Byer Excavating's evidence that it never

allowed Miles or its other employees to leave the job to assist on a separate job site, but Byer Excavating's lack of constant supervision is not enough to establish, as a matter of law, that it "clothe[d Miles] with apparent authority to perform the torts committed." *See generally Jackson*, 891 P.2d at 1392 ("[T]he mere fact that [the employer] employed [the employee] in a managerial position did not clothe [the employee] with the authority to become romantically involved with his subordinates.").

> "Where corporate liability is sought for acts of its agent under apparent authority, liability is premised upon the corporation's knowledge of and acquiescence in the conduct of its agent which has led third parties to rely upon the agent's actions. Nor is the authority of the agent 'apparent' merely because it looks so to the person with whom he deals. It is the principal who must cause third parties to believe that the agent is clothed with apparent authority. . . . It follows that one who deals exclusively with an agent has the responsibility to ascertain that agent's authority despite the agent's representations."

*Zions First Nat'l Bank*, 762 P.2d at 1095 (quoting *City Elec. v. Dean Evans Chrysler-Plymouth*, 672 P.2d 89, 90 (Utah 1983)); *accord Bodell Constr. Co. v. Stewart Title Guar. Co.*, 945 P.2d 119, 124 (Utah Ct. App. 1997). Thus, the mere fact that Byer Excavating allowed Miles to independently operate its equipment on a job site does not demonstrate that Byer Excavating authorized, or should be held liable for, Miles leaving his work to unload rebar for an unrelated job site.

¶13 Second, Sutton argues that Byer Excavating's acquiescence in allowing other Byer Excavating employees to use its trackhoes to unload objects resulted in Sutton reasonably believing that Miles had the authority to unload the rebar. However, Sutton did not dispute that Miles had never unloaded rebar in his work with Byer Excavating, and thus, Sutton did not raise any material issue of fact that Byer Excavating had given Miles the apparent authority to leave his job to unload rebar for an unrelated job site. Not only did Sutton fail to dispute Byer Excavating's evidence that it had not given Miles that apparent authority, but Sutton also failed to dispute that Byer Excavating had given its other employees that authority. Because Sutton failed to produce any evidence to demonstrate that Byer Excavating allowed its other employees to leave the job on which they were working to unload objects for an unrelated job site, Byer Excavating's

undisputed facts established, as a matter of law, that Miles did not have the apparent authority to leave his job to unload rebar for another job site or that Sutton could reasonably rely on that authority. Therefore, the district court did not err in granting summary judgment in Byer Excavating's favor.

## CONCLUSION

¶14 We affirm the district court's grant of summary judgment in favor of Byer Excavating.

_____
Michele M. Christiansen, Judge

-----

¶15 WE CONCUR:

_____
James Z. Davis, Judge

_____
Stephen L. Roth, Judge