2014 UT App 197

# THE UTAH COURT OF APPEALS

E.J. SUTTON,
Plaintiff and Appellant,
*v.*
BOB MILES,
Defendant and Appellee.

Opinion
No. 20130297-CA
Filed August 14, 2014

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 100914201

Karra J. Porter, Nathan R. White, John Edward
Hansen, and David S. Bridge, Attorneys
for Appellant

Julianne P. Blanch, Scott C. Powers, and Robert T.
Denny, Attorneys for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGE GREGORY K. ORME concurred. JUDGE J. FREDERIC
VOROS JR. concurred in the result, with opinion.[1]

BENCH, Senior Judge:

¶1      E.J. Sutton appeals the trial court's grant of summary
judgment in favor of Bob Miles, which was based on its
determination that Miles was an agent or employee of Lowell

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

Construction Co. (Lowell) at the time of the accident from which Sutton's tort claims arise and was therefore immune from suit pursuant to a release signed by Sutton in favor of Lowell (the Release). We reverse and remand for further proceedings.

BACKGROUND

¶2     In 2007, Sutton was employed by R.W. Construction and Miles was employed by Byer Excavating. Both companies were subcontractors working on the construction of a new home in Summit County. Although Sutton and Miles worked for different companies, Sutton was the superintendent "in charge" at the work site.

¶3     At the time Sutton and Miles were working on their site, construction of another new home was taking place on an adjacent lot. Lowell was the general contractor for the second home. On August 1, 2007, Lowell received a load of rebar at its construction site, and Lowell's superintendent, Don Jones, asked Sutton if he and Miles would assist with unloading the rebar. While moving a load of rebar with his trackhoe, Miles accidentally dropped it on Sutton, who was seriously injured.

¶4     Sutton initially filed suit against Byer Excavating, Lowell, and James H. Diamond Concrete. *See Sutton v. Byer Excavating, Inc.*, 2012 UT App 28, 271 P.3d 169. While that litigation was still ongoing, Sutton filed this separate suit against Miles.

¶5     In the first suit, Byer Excavating moved for summary judgment on the ground that Miles was not acting in the course and scope of his employment at the time of the accident. *Id.* ¶ 4. The trial court granted Byer Excavating's motion, and its decision was upheld on appeal. *Id.* ¶ 1.

¶6     In August 2010, Lowell and James H. Diamond Concrete reached a settlement with Sutton. Pursuant to the settlement,

Sutton signed the Release, discharging "Lowell Construction . . . and all of [its] agents, employees, representatives, . . . and assigns, from any and all claims and causes of action . . . arising out of, or in any way connected with the incident of August 1, 2007." The parties then filed a stipulated motion to dismiss the claims against Lowell and James H. Diamond Concrete.

¶7    Sutton continued to pursue his claims against Miles, and in March 2011, Miles amended his answer to assert that the Release barred Sutton's claims against him. Miles then filed a motion for summary judgment asserting that, as a matter of law, he was either an agent, an employee, a representative, or an assign of Lowell at the time of the incident and was therefore covered by the Release. The trial court granted the motion for summary judgment, determining that "while unloading the rebar for Lowell, Mr. Miles became an agent and/or employee of Lowell." Sutton appeals.

ISSUES AND STANDARDS OF REVIEW

¶8    Sutton asserts that genuine issues of fact exist regarding whether Miles was an agent or an employee of Lowell at the time of the accident and that the trial court therefore erred in determining that Miles was "an agent and/or employee" of Lowell as a matter of law. Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

¶9    Miles asserts that even if he was not an agent or an employee of Lowell, he could be considered either an assign or a representative as a matter of law and that we should therefore

affirm the trial court's summary judgment ruling on alternative grounds. "We may affirm a grant of summary judgment upon any ground apparent in the record." *Park v. Stanford*, 2011 UT 41, ¶ 27, 258 P.3d 566 (citation and internal quotation marks omitted).


ANALYSIS

I. Disputed Issues of Fact on Whether Miles Was Lowell's Agent

¶10    In order for an agency relationship to arise, three elements must exist: (1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control. *Wardley Corp. v. Welsh*, 962 P.2d 86, 89 (Utah Ct. App. 1998). Sutton asserts that none of these elements can be established as a matter of law. We agree with the trial court that the first element was established as a matter of law, but we agree with Sutton that disputed issues of fact relating to the second and third elements preclude summary judgment.

¶11    "A principal's manifestation of assent to an agency relationship may be informal, implicit, and nonspecific." Restatement (Third) of Agency § 1.01 cmt. d (2006). It is undisputed that Jones asked Sutton to enlist Miles to assist him in unloading the rebar or, in other words, to act for the benefit of Lowell. This was a sufficient manifestation of intent to satisfy the first element of the agency test. The only argument Sutton raises in support of his assertion that Lowell did not manifest its intent for Miles to act on its behalf is a policy argument: he maintains that one cannot manifest an intent for another to act on his behalf merely by asking for a favor because then vicarious liability would arise any time someone agreed to do a favor for someone else. As Sutton puts it,

> Someone who asks a friend to pick up his dry-cleaning would be vicariously liable if the friend struck a pedestrian in the parking lot. Someone who

asks a dinner guest to pass a cup of coffee would be
vicariously liable if the guest negligently spilled the
hot liquid on a fellow guest.

But this argument ignores the third element of agency: that both
parties must understand that the agent is subject to the principal's
control. *Wardley*, 962 P.2d at 89. The existence of this element
precludes the widespread application of vicarious liability in the
manner outlined by Sutton.

¶12     With respect to the second element, disputed facts exist
regarding whether Miles manifested his intent to act on behalf of
Lowell. Miles's testimony indicates that he did not want to help
unload the rebar but did so at the request of Sutton, whom Miles
considered to be his boss. Miles never spoke to Jones and testified
that the reason he went to the Lowell site to unload the rebar was
because his supervisor, Sutton, told him to. This evidence could
lead a factfinder to conclude that there was no "meeting of the
minds" between Lowell and Miles regarding Miles's assent to act
as Lowell's agent, *see id.*, and that Miles instead believed that he
was acting under the direction of Sutton, who was his supervisor
for the project he was hired to work on.

¶13     Likewise, there were disputed facts regarding whether Miles
was subject to Lowell's control. The control element focuses on
whether the principal "controls, or has the right [to] control, the
*manner* in which the operations are to be carried out," *Mallory v.
Brigham Young Univ.*, 2014 UT 27, ¶ 21 (alteration in original)
(emphasis added) (citation and internal quotation marks omitted);
"if the control extends only to the *result* to be achieved, the actor is
regarded as an independent contractor," *Foster v. Steed*, 432 P.2d 60,
62 (Utah 1967) (emphasis added). The right-of-control test
considers several factors, none of which is "completely
controlling": (1) the existence of covenants or agreements
"concerning the right of direction and control over the [agent]," (2)
whether the principal has "the right to hire and fire" the agent, (3)
"the method of payment (i.e., wages versus payment for a

completed job or project)," (4) who furnishes the equipment, (5) "the intent of the parties," and (6) "the business of the employer."[2] *Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1385–86 (Utah 1996) (citation and internal quotation marks omitted).

¶14 The trial court's list of undisputed facts includes that "the unloading of the rebar by Mr. Sutton and Mr. Miles was at the direction of Lowell" and that "Lowell was in charge of and oversaw the work being done in relation to unloading the rebar that Mr. Miles and Mr. Sutton were helping with." However, Sutton continually disputed these facts in his opposition to Miles's motion for summary judgment, citing deposition testimony indicating that Miles furnished the equipment used for the unloading, that Lowell did not provide any instructions to Sutton or Miles regarding how the unloading was to be performed, that Sutton determined the methods for unloading without input or opposition from Lowell, that Lowell deferred to Sutton's expertise, and that the individuals working on the project considered Sutton to be in charge.

¶15 Miles testified that he considered Sutton to be in charge of the unloading. Three additional witnesses, including Miles's own expert, also testified that Sutton was in charge of the unloading. Although Jones testified that Lowell was in charge of the unloading operation and that Sutton and Miles "became part of [his] operation" by helping him unload the rebar, he also testified that he did not give any direction to Sutton or Miles as to how the unloading should be accomplished, that he never spoke to Miles at all, and that he was surprised by and even disagreed with some of the unloading methods Sutton used but nevertheless deferred to

_____

2. This right-of-control test is most frequently used in the context of determining whether an individual is an employee or an independent contractor for purposes of the Workers' Compensation Act, but the right-of-control concept is derived from agency law. *See Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1385 (Utah 1996).

Sutton's knowledge and skill because "he had no doubt in his mind [that Sutton had] the abilities to . . . undertake [the] task." Both Miles and Sutton confirmed that they had no discussion with Jones as to how the unloading was to be done. Furthermore, there appears to have been no specific agreement as to whether Lowell had the right to control Miles, and the evidence indicates that Miles was not paid for his work and that he used his own equipment to unload the rebar. This evidence raises genuine issues of fact as to whether Lowell had the right to control the manner in which the unloading of the rebar was to be accomplished. *See Mallory*, 2014 UT 27, ¶ 21. This factual dispute precludes summary judgment on the question of whether Miles was an agent of Lowell.

## II. Disputed Issues of Fact on Whether Miles Was Lowell's Employee

¶16    Sutton raises two arguments in contesting the trial court's determination that Miles was Lowell's employee. First, he asserts that the term "employee," as used in the Release, is ambiguous and that the ambiguity precludes summary judgment. *See generally R&R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997) ("[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." (citation and internal quotation marks omitted)). Second, he asserts that even if "employee" is unambiguous, disputed issues of fact should have precluded the trial court from determining, as a matter of law, that Miles was Lowell's employee.

### A.    The Term "Employee" Is Unambiguous.

¶17    Sutton asserts that the term "employee," as used in the Release, is both facially and latently ambiguous. We disagree with both contentions.

¶18    Contract language is facially ambiguous if it is "capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 14, 28 P.3d 669 (citation and internal quotation marks omitted). Sutton argues that "employee" is facially ambiguous because there are three possible reasonable interpretations of the term: (1) someone who is paid for his work, (2) someone who works pursuant to a contract for hire, and (3) someone over whom the principal has the right of control.

¶19    We disagree with Sutton's argument that there are three different ways to interpret the Release's use of the term "employee." An employee is "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Black's Law Dictionary* 602 (9th ed. 2009). Thus, Sutton's separate "definitions" are actually all factors that "should be considered in determining whether an employer–employee relationship exists." *See Stamper v. Johnson*, 2010 UT 26, ¶ 20, 232 P.3d 514 (identifying wages, contract of hire, and right of control as elements of an employer–employee relationship); *see also Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1385–86 (Utah 1996) (identifying agreements between the parties and method of payment as elements relevant to the right-of-control analysis). We therefore determine that the term "employee," as used in the Release, is not facially ambiguous and should be interpreted according to its general meaning.

¶20    Sutton further argues that there is latent ambiguity in the Release's use of the term "employee" because extrinsic evidence suggests that the parties to the Release did not intend for it to protect Miles. "A latent ambiguity is one which appear[s] only as the result of extrinsic or collateral evidence showing that a word, thought to have but one meaning, actually has two or more meanings," *State v. Davis*, 2011 UT App 74, ¶ 4, 272 P.3d 745

(alteration in original) (citation and internal quotation marks omitted), and appears only "in the exceptional case," 32A C.J.S. *Evidence* § 1514 (2008).

¶21 Sutton argues that Lowell's attempt to apportion fault to Miles, Lowell's explicit mention of Jones but not Miles in the Release, the fact that Sutton did not assert a vicarious liability claim against Lowell, the fact that Miles was not discussed during the Release's negotiation, and Miles's lack of involvement in the negotiation indicate that the parties intended to exclude Miles from the definition of employee. However, the fact that the parties may not have anticipated that Miles would fall within the definition of employee as used in the Release does not mean that they intended employee to mean "any employee except for Miles." We agree with Miles that Sutton's argument is simply an attempt "to use extrinsic evidence to jump over the ambiguity portion of the analysis and proceed directly to determining the parties' intent with extrinsic evidence." Accordingly, we reject Sutton's assertion that the term "employee," as used in the Release, contains a latent ambiguity.[3]

---

3. We do observe, however, that it does not appear that the parties to the Release intended for Miles to be subject to the Release. Miles asserted at oral argument that Sutton had the burden of explicitly reserving his claims against Miles in the Release in order to avoid having the release construed as releasing Miles. This position is inconsistent with Utah law, which requires specificity regarding the parties to be released and reverses the common law rule presuming that a release of one tortfeasor releases all other tortfeasors as well. *See* Utah Code Ann. § 78B-5-822 (LexisNexis 2012) ("A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides."); *Child v. Newsom*, 892 P.2d 9, 11–12 (Utah 1995) (construing section 78B-5-822 to require "some degree of specificity" in describing the defendants to be released and determining that boilerplate language releasing "all other persons, firms and corporations" was

(continued...)

B.      Whether Miles Was Lowell's Employee Cannot Be Determined as a Matter of Law.

¶22    Nevertheless, we agree with Sutton that disputed issues of fact preclude summary judgment on the question of whether Miles was Lowell's employee. The test for determining whether an individual is an employee is derived from agency law and focuses on the employer's right to control the employee. *Glover*, 923 P.2d at 1385–86 ("[W]hether an employer–employee relationship exists depends upon the employer's right to control the employee." (citation and internal quotation marks omitted)). The factors relevant to this right-of-control test are the same as those relevant to the right-of-control element in the agency context. *See supra* ¶ 13. As discussed, *supra* ¶¶ 13–15, disputed issues of fact exist with respect to whether Lowell had the right to control the manner in which Miles accomplished the unloading of the rebar. Thus, the trial court erred by determining, as a matter of law, that Miles was Lowell's employee.

III. Alternative Argument that Miles Was a Representative or
Assign of Lowell

¶23    Miles asserts that even if we reverse the trial court's determination that he was an employee or agent of Lowell as a matter of law, we should affirm the trial court's summary judgment ruling on alternative grounds, namely, that Miles was a

---

3. (...continued)
not sufficiently specific to effectuate a release (internal quotation marks omitted)). Given that Miles was the primary tortfeasor, had the parties intended to include him in the Release it is likely that he would have been mentioned by name, particularly in light of the fact that Jones was mentioned by name. Thus, if anything, the fact that Miles was not mentioned by name favors Sutton's position that the parties intended to exclude him.

representative or assign of Lowell. We agree with Sutton that Miles does not necessarily fall into either of these categories.

¶24    The ordinary meaning of the term "representative" is "[o]ne who stands for or acts on behalf of another," *Black's Law Dictionary* 1416 (9th ed. 2009), "especially through delegated authority," Merriam–Webster, http://www.merriam-webster.com/dictionary/representative (last visited July 23, 2014); *see also Black's Law Dictionary* 235 (explaining that one who acts in a "representative capacity" often does so "through delegated authority"). Generally, as Miles acknowledged in his memorandum to the trial court, the terms "representative" and "agent" are used synonymously. *See Kenny v. George A. Fuller Co.*, 450 N.Y.S.2d 551, 557 (N.Y. App. Div. 1982) (indicating that the terms "agent" and "representative" are "synonymous" (internal quotation marks omitted)); *Texas Power & Light Co. v. Adamson*, 203 S.W.2d 275, 276 (Tex. Civ. App. 1947) (determining, in interpreting a Texas statute, that "the terms 'agency' and 'representative' are interchangeable"); *Black's Law Dictionary* 1416 (referring the reader to the term "agent" and cases falling under "Principal and Agent" headnotes in defining "representative"); *id.* at 72 (defining "agent" as "a representative"). Thus, for the same reason disputed issues of fact exist as to whether Miles was Lowell's agent, they also exist as to whether he was Lowell's representative.

¶25    The ordinary meaning of the term "assign" is "[o]ne to whom property rights or powers are transferred by another." *Black's Law Dictionary* 135–36. There are no facts, disputed or otherwise, suggesting that Lowell transferred property rights to Miles, and there is therefore no basis for determining that Miles was an "assign" of Lowell.

¶26    Miles nevertheless urges us to adopt broader definitions of the terms "representative" and "assign" that would permit us to determine that he was a representative of Lowell because he "serv[ed] Lowell in moving the rebar" and that he was an assign of

Lowell because he was "assigned" the task of unloading the rebar. Miles asserts that broad definitions are justified because the Release was drafted so as to intentionally include anyone connected with Lowell. This argument is similar to Sutton's argument that the term "employee" contains a latent ambiguity because of the parties' intent in drafting the Release and is likewise without merit. Therefore, we cannot affirm the trial court's summary judgment ruling on the alternative grounds suggested by Miles.

CONCLUSION

¶27    We determine that disputed issues of fact exist as to whether Miles manifested an intent to act for Lowell and whether Lowell had the right to control the manner in which Miles unloaded the rebar. These disputed issues of fact should have precluded the trial court from determining, as a matter of law, that Miles was Lowell's agent. We also determine that the terms employee, representative, and assign are unambiguous; that disputed issues of fact preclude summary judgment on the issues of whether Miles was Lowell's employee and whether he was Lowell's representative; and that Miles cannot be considered an assign of Lowell. We reverse the trial court's summary judgment ruling and remand for further proceedings.

―――――――

VOROS, Judge (concurring):

¶28    I concur with the majority opinion that the trial court erred in granting summary judgment. However, in my view the summary judgment should be reversed not because disputed issues of fact exist as to Miles's intent or Lowell's control, but because the Release does not as a matter of law identify Miles with the requisite specificity.

¶29 This appeal concerns the enforceability of a release. Under the superseded common law rule, "a release of one tort-feasor also released all other tort-feasors." *Child v. Newsom*, 892 P.2d 9, 12 (Utah 1995). While Utah statutory law once followed this rule, our current statute reverses it: "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." Utah Code Ann. § 78B-5-822 (LexisNexis 2008).

¶30 In *Child v. Newsom* our supreme court construed the phrase "unless the release so provides." 892 P.2d at 11–12. The *Child* case arose from a traffic accident in which one car hit another. A passenger in the latter car died. Her father brought wrongful-death actions against both drivers. He settled the claim against one driver and that driver's insurance carrier. The release named that driver, the insurance carrier, and all agents and employees of the insurance carrier, "together with all other persons, firms and corporations." *Id.* at 9–10. The second driver moved for summary judgment on the ground that, as a member of the class of "all other persons, firms and corporations," she too was released from liability. *Id.* at 10.

¶31 That the second driver fell within the class of "all other persons, firms and corporations" could hardly be disputed. Yet the supreme court ruled that under the release statute, that release did not cover her. *Id.* at 11–12. The court explained that because the statute prescribes that a release given to one defendant does not discharge any others "unless the release so provides," Utah Code Ann. § 78B-5-822, that phrase "must be construed narrowly as requiring some degree of specificity," *Child*, 892 P.2d at 11. The court adopted the analysis reached by numerous other states with similar or identical statutes that have "unequivocally held" that general release language such as "all other persons, firms and corporations" does not encompass "persons not specifically named, described, or specifically identified therein." *Id.* at 12 (collecting cases). Consequently, pursuant to the release statute, "a release

must contain language either naming the defendant or identifying the defendant with some degree of specificity in order to discharge that defendant from liability." *Id.*

¶32    The release before us fails this test as to Miles. The release names Lowell Construction, Lowell's construction superintendant Don Jones, and its insurance carrier—described as "Releasees"—together with "all of their agents, employees, representatives, parent companies, insurers, subsidiaries, affiliates, related entities, owners, successors, and assigns." Miles, an employee of Byer Excavating, was the principal tortfeasor, the person actually handling the rebar that Sutton alleges fell on him—the person, in short, who in Sutton's view acted negligently. Yet the Release does not name Miles. Given this omission, I cannot agree that the Release identifies him with "some degree of specificity." *Id.*

¶33    Admittedly, the phrase "some degree of specificity" itself lacks specificity. Presumably our supreme court incorporated flexibility into the rule so that it could be adapted to the circumstance presented. I believe the rule requires sufficient specificity to demonstrate an actual intent to release the unnamed defendant. Under this standard, the Release's general reference to Lowell Construction's employees, agents, and assigns probably does reflect an intent to release office workers at company headquarters who had no involvement in the rebar incident. But a generalized reference to Lowell's agents, employees, assigns, and so forth cannot, in my view, be reasonably read to reflect an intent to release Miles. First of all, Sutton alleges that Miles personally committed the tortious act. Parties intending to release the principal tortfeasor would not likely identify him merely as an employee, agent, or assign of Lowell—especially since no evidence shows that Miles was on Lowell's payroll, that he received compensation from Lowell, that he considered himself a Lowell employee on the day in question, or that he had a business relationship of any description with Lowell before or after the incident. A drafter actually intending to identify Miles with "some

degree of specificity" would not name Jones but hope that Miles fell within a generic category populated with Lowell employees unrelated to the incident.

¶34     I do not disagree with the majority's discussion of agents, employees, representatives, and assigns. But in my view, even if under a careful reading of Utah law Miles fit within one of these categories, I would nevertheless hold as a matter of law that the Release did not identify him with the specificity required by section 78B-5-822 and *Child*.

————