2022 UT App 18

## THE UTAH COURT OF APPEALS

JENSEN TECH SERVICES AND SENTINEL INSURANCE COMPANY LTD.,
Petitioners,
*v.*
LABOR COMMISSION AND SERGIO HERRERA,
Respondents.

Opinion
No. 20200194-CA
Filed February 3, 2022

Original Proceeding in this Court

Ryan P. Atkinson, Scarlet R. Smith, and Matthew A.
Jones, Attorneys for Petitioners

Gary E. Atkin and Marsha S. Atkin, Attorneys for
Respondent Sergio Herrera

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1 On a job-by-job basis, Sergio Herrera agreed to provide IT services for Jensen Tech Services' (Jensen) clients. While performing one of these unsupervised work orders, Herrera fell from a ladder, injuring his ankle. When Herrera sought compensation, the Utah Labor Commission (the Commission) ultimately identified Herrera as Jensen's employee and thus ruled that he qualified for workers' compensation benefits. However, after reviewing the record before us, we set aside the Commission's decision and instruct the Commission to reconsider the issue in accordance with the following opinion.

BACKGROUND[1]

¶2    As an IT technician, Herrera installed computers, ran cables, and facilitated IT-switch connections. Having the necessary training and two years of experience, Herrera eventually signed an agreement (the Agreement) with Jensen to receive specific work orders through Jensen's dispatch and online portal. One relevant portion of the Agreement read,

> As an independent contractor for Jensen Tech Services, I will not compete with or take work from buyers outside of Jensen Tech Services, and I will report all communications with buyers to Jensen Tech Services. Ten percent commission on all contracts will be given to Jensen Tech Services along with ten percent to the marketplace, no payments will be made until contracts have been completely closed, and payments from buyers have been received by Jensen Tech Services.[2]

The Agreement further stated that Herrera would be paid based on completed work orders and that, "[a]s an independent contractor," Herrera did not enter an employer–employee relationship, could not act as Jensen's agent, would provide his own tools and materials, and would be responsible for his own

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *O'Connor v. Labor Comm'n*, 2020 UT App 49, n.1, 463 P.3d 85.

2. We acknowledge the ineloquence of the Agreement and note, for example, the Agreement's failure to identify Herrera as the contracting party and our struggle to understand what the terms "buyers outside of Jensen" and "the marketplace" (which the Agreement references in no other way) mean.

taxes and withholdings as well as necessary insurance, taxes, and withholdings for any subcontractors or consultants hired by Herrera. And although Herrera testified that he was free to accept work from others or refuse available jobs, for a period of time he received so many jobs from Jensen that he sought no other work.

¶3    Generally speaking, Herrera would call Jensen's dispatch or check its online portal to receive a work order that instructed him on where and when to perform the work. If he found the job parameters acceptable, Herrera would take the job and, upon arriving at the worksite, check-in with the customer and Jensen using the online portal. During each job, Jensen provided Herrera with a "phone line" and "consumables . . . [or] special cable . . . use[d] to access some of the clients' switches and routers," as well as the cables for installation and a laptop for connecting the IT switches. The tools and equipment that Herrera provided for himself included transportation, working tools, drills, cutters, screwdrivers, a phone-line tracer, a ladder, and a personal cell phone—camera included. Herrera's actual work went unsupervised even though Jensen's owner and other Jensen contractors sometimes worked at the same job site. But upon finishing the work order, Herrera checked out through the online portal, sent pictures of his work to the customer and Jensen (depending on the job requirements), and either received Jensen's approval or was required to return and "correct the work without pay." Jensen received payment for the work order's satisfactory completion and then paid Herrera, usually by the job and sometimes by the hour (at times including mileage), but did not withhold taxes and instead provided Herrera with a 1099 tax form.[3]

---

3. The record contained a 1099-MISC Jensen provided to Herrera. "A 1099–MISC form is a tax form that reports earnings paid to an independent contractor or a person who is self-employed but has

¶4 While attending to the work order relevant to this case, Herrera stood atop a twelve-foot A-frame ladder, and as he ran a phone cable to an alarm system, the ladder fell out from under him. Despite his efforts to hang from the ceiling with his hands, Herrera dropped "about 16 feet," crashing feet first onto the concrete floor and injuring his left ankle. Herrera called Jensen's dispatch and was instructed to go to the hospital, where he was diagnosed "with a left tibial fracture and ligament injuries in his left ankle." Following surgery and physical therapy, Herrera began working for a different company several months later.

¶5 Around that same time, Herrera applied for workers' compensation benefits, seeking payment for "medical expenses, follow-up care, and compensation" for the period that had passed since the accident. Jensen and Sentinel Insurance Company contested the application. In response, an administrative law judge (the ALJ) conducted an evidentiary hearing to determine if Herrera qualified as a Jensen "employee" for workers' compensation purposes. Following the hearing, the ALJ entered findings of fact nearly identical to those recited above. The ALJ concluded that, based on an application of these facts to various legal factors used to identify independent contractors, Herrera did meet the definition of an independent contractor and thus did not qualify for workers' compensation benefits. The ALJ accordingly denied Herrera's application.

¶6 Herrera sought review from the Commission. Although it adopted many of the ALJ's findings of fact, the Commission rejected the ALJ's conclusion and determined that Herrera was Jensen's employee and qualified for workers' compensation

---

performed work for another. The person or entity that pays for the services fills out and provides the 1099–MISC form to the worker for earnings paid during the tax year." *Needle Inc. v. Department of Workforce Services*, 2016 UT App 85, ¶ 3 n.3, 372 P.3d 696.

benefits. In making this determination, the Commission relied on the facts that Herrera performed the same work as Jensen itself, that Herrera testified to working a full-time schedule for Jensen, and that Jensen could require Herrera to correct unsatisfactory installations. The Commission also relied on its understanding of the word "employee" and on the Agreement. According to the Commission, the Agreement contained ambiguity regarding the meaning of the word "buyer" and the scope of the Agreement's noncompete clause. The Commission stated that, because the Agreement contained ambiguity, and "[b]ecause Jensen controlled the terms of the [Agreement] that it required . . . Herrera to sign, the ambiguity must be construed against Jensen." The Commission determined that the Agreement "limited [Herrera] from competing with Jensen and obtaining work from a 'buyer' outside of his work with Jensen," including "preventing . . . Herrera from seeking work from even prospective clients outside of his work with Jensen," thus suggesting that "Jensen retained a right to control" Herrera that is fundamental to an employer–employee relationship as opposed to independent-contractor status.

¶7 On remand, the ALJ awarded Herrera benefits. When Jensen requested the Commission's review, the Commission affirmed the ALJ's order and reiterated the same findings of fact. And in its conclusion, the Commission mentioned that Jensen provided necessary equipment, "such as cable and a laptop," and emphasized the Agreement's noncompete provision and Jensen's right to approve the final work product.

¶8 Jensen now seeks judicial review.

ISSUE AND STANDARD OF REVIEW

¶9 Jensen asserts that the Commission failed to properly and completely employ the correct legal standard in determining Herrera's status as an employee as opposed to an independent

contractor.[4] "Whether the Commission applied the correct legal standard is a question of law we review for correctness." *YESCO v. Labor Comm'n*, 2021 UT App 96, ¶ 13, 497 P.3d 839; *see also* Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2019) (stating that the appellate court may grant relief if "a person seeking judicial review has been substantially prejudiced by," among other things, a situation where "the agency has erroneously interpreted or applied the law"). And when an agency misapplies the governing law in making a decision, we may set aside the resulting decision with instructions to reconsider the issue. *See Oliver v. Labor Comm'n*, 2013 UT App 301, ¶¶ 14–15, 318 P.3d 777.

## ANALYSIS

¶10    Jensen contends that although the Commission referenced the right-to-control analysis, which governs this case, it "failed to continue with the analysis." We agree. While our caselaw has established a robust right-to-control test and associated analysis to assist in applying the governing statutes, the Commission did not fully engage with that analysis.

### *Governing Statutes*

¶11    Utah Code provides that "[a]n employee . . . who is injured . . . by accident arising out of and in the course of the employee's employment . . . shall be paid . . . compensation for loss sustained on account of the injury." Utah Code Ann. § 34A-2-401(1)(a) (LexisNexis 2019). Thus, before benefits can be issued, a key question is whether the requesting individual is actually an "employee."

---

4. While the briefs discuss many additional issues, because we resolve the case on this issue, we have no occasion to discuss the remaining issues except as otherwise indicated.

¶12    An "employee" is "a person in the service of any employer, . . . who employs one or more workers or operatives regularly in the same business, . . . under any contract of hire[,] . . . not including any person whose employment . . . is casual[] and . . . not in the usual course of the trade, business, or occupation of the employee's employer." *Id.* § 34A-2-104(1)(b).

¶13    On the other hand, an

> "[i]ndependent contractor" means any person engaged in the performance of any work for another who, while so engaged, is:
>> (A) independent of the employer in all that pertains to the execution of the work;
>> (B) not subject to the routine rule or control of the employer;
>> (C) engaged only in the performance of a definite job or piece of work; and
>> (D) subordinate to the employer only in effecting a result in accordance with the employer's design.

*Id.* § 34A-2-103(2)(b)(i) (Supp. 2021). Our jurisprudence's "right to control" test is anchored in these statutes. *See Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 10, 985 P.2d 243; *see also* Utah Code Ann. § 34A-2-103(2)(b)(i) (stating that an independent contractor is "not subject to the routine rule or control of the employer" but is "subordinate to the employer only in effecting a result in accordance with the employer's design").

*Right-to-Control Test*

¶14    "Regardless of how the parties intended to structure their relationship," when "determining whether a worker acted as an employee as opposed to an independent contractor for purposes of the Workers' Compensation Act, our inquiry has long focused on whether the employer had the right to control the worker,"

while keeping in mind that "the degree of control actually asserted is not essential." *Manning*, 1999 UT 77, ¶ 10 (cleaned up); *see also Norris v. Labor Comm'n*, 2010 UT App 358U, para. 5 (same). Initially,

> the main facts to be considered as bearing on the relationship here are: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment; and (4) the furnishing of equipment.

*Manning*, 1999 UT 77, ¶ 11 (cleaned up). Generally, in application,

> an employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties. In contrast, an independent contractor is one who is engaged to do some particular project or piece of work, usually for a set total sum, who may do the job in his or her own way, subject to only minimal restriction or controls and is responsible only for its satisfactory completion.

*Id.* (cleaned up). None of these factors controls completely, but "they all should be considered together in determining whether the requirements of the statute are met." *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316, 318 (Utah 1975); *see also id.* ("In its carefully prepared findings and order it appears that the Commission gave due consideration to the factors just listed . . . ."); *Glen M. Barney & Sons, Inc. v. Industrial Comm'n*, 609 P.2d 948, 949 (Utah 1980) ("This court has considered the evidentiary factors necessary to establish the [employee or independent contractor] relationship on numerous occasions." (cleaned up)).

¶15    While we do not intend to mandate that every factor be thoroughly explored in every case, the absence of any substantive application of the recited facts to the relevant factors undermines our confidence that the Commission gave proper credence to these relevant factors. Regarding the right-to-control test, which is used to apply the relevant statutory definitions, the Commission partially analyzed only two of the four factors, at best, and did so without considering governing caselaw interpreting those two factors.

¶16    Where an "incorrect legal standard [is] applied to the facts of [a] case," we may "reverse and remand . . . for further proceedings consistent with [our] opinion." *Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 31, 345 P.3d 1253; *see also Oliver v. Labor Comm'n*, 2013 UT App 301, ¶¶ 14–15, 318 P.3d 777. This is the course we elect to take here. Specifically, in its right-to-control analysis, the Commission emphasized two main bases for its conclusion—that the Agreement subjected Herrera to a noncompete clause and that Jensen retained the right to approve Herrera's final work product. But the first of these hardly substitutes for a thorough application of the right-to-control test, and the second basis is, as a statutory and a jurisprudential matter, erroneous. Although we do not express an opinion on how the complete right-to-control test applies in this case, we detail each factor in turn as guidance for the Commission during its reconsideration of the issue.

I. Agreements Concerning Right to Control

¶17    The first factor—"covenants or agreements . . . concerning the right of direction and control," *Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 11, 985 P.2d 243 (cleaned up)—has led courts to find that a right to control existed when the employer possessed the right to govern a worker's conduct and product in multiple ways, including when "the employer had the right to control the worker's manner or method of executing or carrying

out the work," *see id.* ¶ 10. Here, the Commission determined that the Agreement's noncompete language (which by one interpretation could restrict Herrera's ability to solicit IT work outside of the work provided by Jensen) and Jensen's right to approve the final work product, gave Jensen a right to control Herrera to such an extent that it supported a determination that he qualified as an employee. However, this analysis was incomplete as it pertains to the noncompete provision and incorrect as it pertains to the approval of the final work product.

¶18 Regarding its analysis of the Agreement, the Commission does not appear to have considered its contents as a whole. While we recognize that the noncompete clause, in isolation, may be indicative of an employer–employee relationship, the noncompete clause is not the only provision in the Agreement that informs a determination of whether the Agreement gave Jensen a right "of direction and control." *See id.* ¶ 11 (cleaned up). And here, other provisions in the Agreement warranted consideration.

¶19 For example, Herrera's implied ability to hire subcontractors was a factor that weighed against an employer–employee relationship. "An independent contractor can employ others to do the work and accomplish the contemplated result without consent of the [employer], while an employee cannot." *Id.* ¶ 14 (cleaned up). In *Manning*, the court identified a "right of direction and control," *id.* ¶ 11 (cleaned up), when the worker "agree[d] to perform the work as directed by [the employer]"; gave the employer "rights, privileges, options and exercise of discretion with respect to said work . . . [to] be maintained and exercised with or against [the worker]," *id.* ¶ 12 (cleaned up); and agreed to obtain the employer's approval before hiring a subcontractor, *id.* ¶ 14. The agreement there also required a written daily report, specified regular working hours, and gave the employer the right to control the work, which right the employer routinely exercised. *Id.* ¶ 13. In contrast, the Agreement

here implicitly addressed Herrera's right to hire others to accomplish the work by stating that Herrera would be responsible for taxes, insurance, and other matters related to Herrera "or any other person consulted or employed by [Herrera] in performing services under" the Agreement.

¶20 On remand, the Commission should consider the noncompete provision in light of the Agreement as a whole. Although the Commission might conclude that, on balance, the Agreement as a whole is more indicative of an employer–employee relationship, the Commission must first at least attempt to balance the import of all the provisions of the Agreement rather than focusing on a single provision to the exclusion of the others.

¶21 Regarding its analysis of Jensen's right to approve Herrera's final work product, the Commission incorrectly construed this right as a hallmark of an employer–employee relationship. Employees are those who "perform the employer's work as directed by the employer and who [are] subject to a comparatively high degree of control in performing those duties." *Id.* ¶ 11 (cleaned up). Independent contractors, on the other hand, "may do the job in [their] own way, subject to only minimal restriction or controls and [are] *responsible only for its satisfactory completion*." *Id.* (cleaned up) (emphasis added). In fact, the very statute defining "independent contractor" expressly provides that an independent contractor is "subordinate to the employer . . . in effecting a result in accordance with the employer's design." Utah Code Ann. § 34A-2-103(2)(b)(i) (LexisNexis Supp. 2021).

¶22 Thus, the right to control focuses not on the right to require a satisfactory product but on the "right to control the manner or method in which the [worker completes the] work." *See Averett v. Grange*, 909 P.2d 246, 249 (Utah 1995). Indeed, a hiring party "who wants to get work done without becoming an employer, is entitled to as much control of the details of the work as is necessary to ensure that it gets the end result from the contractor

that it bargained for." 5 Arthur Larson et al., *Larson's Workers' Compensation Law* § 61.03[1] (2021). "[C]ontrol of the quality or description of the work itself" is "distinguish[able] from control of the person doing it." *Id.* In other words, the quality of the final product is at the discretion of the person doing the hiring, and exercising that discretion for the limited purpose of ensuring the final product's quality meets the required standards does not by itself render the worker an employee. *See id.*; *see also Averett*, 909 P.2d at 250 ("[C]lients . . . have certain rights as to the end product . . . in all independent contractor relationships . . . ."); *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316, 318 (Utah 1975) ("[A]n independent contractor . . . is responsible only for [a job's] satisfactory completion."); *Luker Sand & Gravel Co. v. Industrial Comm'n*, 23 P.2d 225, 228 (Utah 1933) ("An independent contractor is one who has entered into a contract or upon employment to render service or do work for another, according to his own method, means, and manner of doing the work, and without being subject to the control, direction, or supervision of such other, *except as to the result of the work or service.*" (cleaned up) (emphasis added)); *Ludlow v. Industrial Comm'n*, 235 P. 884, 888 (Utah 1925) ("An independent contractor [is] . . . one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified. . . . [This] general statement[] as to what constitutes an independent contractor must be accepted with the modification that the status of independent contractor is not affected by the mere fact that the employer may supervise and direct in matters necessary to a faithful performance of the contract." (cleaned up)); *Stricker v. Industrial Comm'n*, 188 P. 849, 851 (Utah 1920) ("If one renders service to another in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, he is an independent contractor." (cleaned up)); *cf. Callahan v. Salt Lake City*, 125 P. 863, 865 (Utah 1912) (noting that the independent contractor had an obligation to comply "with the

specifications and terms of the contract," even though the employer "had no more right to interfere with the methods . . . employed in doing the work than a mere stranger would have had").

¶23    For example, in *Averett v. Grange*, 909 P.2d 246 (Utah 1995), the court found an agreement establishing the right to control when the worker was "subject to the direction of [the employer] as to what, when, how, and where the work was to be performed"; had agreed to "perform[] other duties at the job site when asked"; *and* was supervised by a manager during work. *Id.* at 250. And in *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316 (Utah 1975), the court upheld the Commission's conclusion that the worker was an employee when the worker had to receive approval from a supervisor for his work activities, could not refuse particular assignments, had to check in throughout his assignments, was given "direction" regarding company equipment, and had been penalized for violating company policy. *Id.* at 318–19. On the other hand, in *Norris v. Labor Commission*, 2010 UT App 358U, when the employer "had no supervision" over the work and the worker "decided his own work schedule," the court declined to disturb the Commission's determination that the worker qualified as an independent contractor. *Id.* para. 6. Here, the Agreement required Herrera to provide satisfactory completion of the work, but Herrera undertook no obligation to be available, complete a certain number of jobs, or even accept any jobs from Jensen. Herrera did engage with Jensen for recurring jobs—and at times these were substantial enough to compare to a full-time schedule—but these jobs were defined, specified projects that Herrera completed on his own schedule within the parameters included in the job description. And not until completion did Herrera's work come under scrutiny, even when working on the same site as other Jensen workers and even Jensen's owner.

¶24    In our view, the Commission appears to rely almost exclusively on the Agreement's noncompete clause, while

overlooking other contractual provisions. And the Commission wrongly understood Jensen's right to approve the work as being legally indicative of the right to control. On remand, the Commission should apply established law and, while considering the Agreement as a whole, engage in a full analysis of all aspects of the parties' agreement concerning the right to control.

## II. The Right to Hire and Fire

¶25 The second factor under the right-to-control test is "the right to hire and fire." *Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 11, 985 P.2d 243 (cleaned up). In this context, the relevant inquiry is whether Herrera had the right to employ others to do his work outside of Jensen's control. *See id.* ¶ 14 (evaluating the level of control exerted by the purported employer over individuals hired by the purported employee).[5] As this court has recognized, "The difference between an employee and an independent contractor is [that] . . . an independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of the employer." *See Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 244 (Utah Ct. App. 1998) (cleaned up); *see also id.* at 244–45 (determining that a party was not an independent contractor based in part on the fact that he had no authority to hire or fire the individual working under his supervision).

¶26 As explained above, *see supra* ¶¶ 18–19, the Commission did not analyze Herrera's alleged right to hire others to do his work without oversight from Jensen. On remand, the

---

5. In other contexts, particularly where there is a dispute over whether one of two entities or individuals is the worker's employer, the inquiry focuses on "whether the principal has the right to hire and fire the agent." *See Sutton v. Miles*, 2014 UT App 197, ¶ 13, 333 P.3d 1279 (cleaned up).

Commission should consider this issue and explain how any such right factors into its analysis.

### III. Method of Payment

¶27 The third factor, "method of payment," has led courts to identify employees as those paid on a regular basis by the hour or by a set salary, and independent contractors as those paid a certain amount for a particular job. *See Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 11, 985 P.2d 243 (cleaned up). The Commission did recite facts related to this factor but did not apply those facts to the caselaw to reach a conclusion.

¶28 Our caselaw illustrates how this factor should be applied. For example, in *Averett v. Grange*, 909 P.2d 246 (Utah 1995), the fact that the worker, like the employer's other workers, was "paid by the hour every two weeks . . . [and] not paid by the job," was one factor that led the court to identify the worker as an employee. *Id.* at 250. On the other hand, in *Norris v. Labor Commission*, 2010 UT App 358U, the fact that the worker "would be paid a certain amount of money to perform a job" weighed in favor of the court's declining to disturb the Commission's determination that the worker was an independent contractor. *Id.* para. 6 (cleaned up); *see also Manning*, 1999 UT 77, ¶ 15 (stating that "*despite the fact that* the parties' agreement specified payment of a lump sum for completing the job and that [the worker] would furnish his own equipment, the evidence as a whole supports the district court's determination that, as a matter of law, [the worker] acted as [the employer's] employee" (emphasis added)).

¶29 As it relates to this factor, the situation presented here provided the Commission ample facts to evaluate, including that Herrera "was usually paid by the job, but would also be paid by the hour on occasion," that Herrera received payment "weekly based on payments from the previous week," and that "Jensen did not withhold taxes from [Herrera]'s pay and gave him a 1099 tax form." And on remand, where the Commission has facts

regarding this factor in the record, the Commission should include some indication of how those facts are considered in the Commission's right-to-control analysis.

## IV. Furnishing of Equipment

¶30    The fourth factor—"furnishing of equipment," *Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 11, 985 P.2d 243 (cleaned up)—generally provides that courts identify employees as those workers who receive equipment from the employer and independent contractors as those workers who provide their own equipment. Regarding this factor, the Commission concluded that "Jensen also provided . . . Herrera with some of the necessary equipment, such as cable and a laptop to facilitate connection of clients' IT switches." The Commission's findings stated that "Herrera used his own tools and equipment for installations, with the exception of cable and a laptop." But on review, although we see that Jensen also provided a "phone line" and "consumables . . . [or] special cable . . . use[d] to access some of the clients' switches and routers," the tools and equipment that Herrera provided for himself included transportation, working tools, drills, cutters, screwdrivers, a phone-line tracer, a ladder, and a personal cell phone—along with its camera. After reviewing these findings and assertions as well as the law controlling this factor, it is not clear how the Commission weighed these facts in light of the controlling law.

¶31    In *Osman Home Improvement v. Industrial Commission*, 958 P.2d 240 (Utah Ct. App. 1998), the court identified the worker as an employee, in part, based on the fact that the employer "provided all the . . . material required to complete the project." *Id.* at 245; *see also Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 309 (Utah 1984) (deciding that the Commission's identifying the worker as an employee was warranted, in part, because the employer "maintained some control over the materials" in that the worker "could acquire the materials only after receiving payment");

*Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316, 318 (Utah 1975) (identifying the worker as an employee, in part, based on the fact that the employer had registered as the owner of the equipment the worker used and had overtly indicated that ownership). Conversely, in *Norris v. Labor Commission*, 2010 UT App 358U, the court declined to disturb the Commission's determination that the worker qualified as an independent contractor when he "provided his own tools for the work, used his own truck, and was responsible for purchasing most of the supplies for the work, with the exception of the cleaning supplies that he was told he could use." *Id.* para. 6 (cleaned up); *see also Manning*, 1999 UT 77, ¶ 15 (identifying the worker as an employee "*despite the fact that*" the worker "furnish[ed] his own equipment" (emphasis added)).

¶32    Here, Herrera "provided his own tools for the work [and] used his own [transportation]," but he also received cables and a laptop to assist with that work. *See Norris*, 2010 UT App 358U, para. 6 (cleaned up). And in its analysis, although the Commission mentioned the cables and the laptop provided by Jensen, it did not explain how this weighed against the transportation, working tools, drills, cutters, screwdrivers, phone-line tracer, ladder, and personal cell phone (complete with camera) that Herrera provided for himself. Such facts existing in the record warrant consideration, and on remand, the Commission should address these facts and apply established law in undertaking its analysis.[6]

---

6. Alternatively, Herrera requests that we leave the Commission's decision intact based on a "legal ground or theory apparent on the record"—specifically, based on the idea that Herrera would still qualify for benefits as a "statutory employee" under Utah Code section 34A-2-103(7)(a)(ii). While "the appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated . . . to be the

CONCLUSION

¶33 Where the Commission failed to properly and completely apply the legal standards that govern here—and in its right-to-control analysis, relied primarily on only two bases, one of which was faulty as a legal matter—we set aside the Commission's final decision and direct it on remand to reconsider Herrera's status as an employee or an independent contractor in light of the governing law and the guidance we have suggested.

————————

basis of [the] ruling or action," *State v. Montoya*, 937 P.2d 145, 149 (Utah Ct. App. 1997) (cleaned up), we may do so only "as long as we do not reweigh the evidence in light of the new legal theory or alternate ground," *State v. Malloy*, 2019 UT App 55, ¶ 9, 441 P.3d 756 (cleaned up), *aff'd*, 2021 UT 61, 498 P.3d 358. And here, even assuming (without deciding or indicating) that the "statutory employee" theory applies in this context, we would be unable to apply the proposed legal ground to the facts of this case without reweighing the evidence—particularly regarding the determination of whether Jensen maintained "supervision or control" over Herrera. *See* Utah Code Ann. § 34A-2-103(7)(a)(ii) (LexisNexis Supp. 2021).